No. 80,995

BRIAN COLFAX, a minor, by and through CHRISTINE COLFAX, his mother, natural guardian and next friend, *Appellee*, v. JAMES JOHNSON and RUTH MCFARLAND, *Defendants*, v. CONTINENTAL WESTERN INSURANCE COMPANY, *Appellant*.

(11 P.3d 1171)

Opinion filed October 27, 2000.

*E. Craig Kennedy*, of Johnson, Kennedy, Dahl & Willis, of Wichita, argued the cause and was on the briefs for appellants.

*William A. Wells*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J: Garnishee, Continental Western Insurance Company (Continental), seeks review of the Kansas Court of Appeals' affirmance of the district court's ruling that Continental provided automobile liability insurance to an individual who neither owned, operated, nor was a passenger in the vehicle insured by Continental at the time of an accident that injured a minor. Continental claims the district court erred (1) in finding that Continental provided liability coverage to an individual directing the vehicle as a "user" who contributed to the child's injuries; (2) by modifying a previous journal entry of judgment to allocate fault between the parties; and (3) by allocating negligence based on what conduct is within the scope of an insurance policy's coverage.

Ruth McFarland cared for plaintiff, Brian Colfax, and five other children. Prior to the accident, James Johnson was preparing to leave McFarland's home in his pickup truck. Johnson was aware that children were playing in the immediate area. Johnson asked McFarland to check for children behind the vehicle. McFarland walked to the back of the truck and informed Johnson that there were no children behind the pickup, and it was all right to back up. Unknown to McFarland, Colfax was under the truck. Colfax sustained serious injuries when Johnson backed the pickup.

On July 11, 1995, Colfax settled with Johnson for $17,500, without prejudice to Colfax's right to pursue a negligence claim against McFarland. On October 27, 1995, a settlement hearing was conducted as to McFarland's liability. The district court found the proposed $75,000 settlement agreement between McFarland and Colfax was fair and rendered judgment against McFarland for $75,000, plus interest and court costs. Colfax garnished McFarland's insurance company, Shelter Insurance, Inc., (Shelter). Shelter paid $2,500 as settlement of its coverage. The garnishment against Shelter was dismissed with prejudice.

On November 28, 1995, Colfax filed a garnishment against Johnson's automobile insurance carrier, Continental, claiming that Johnson's policy also covered McFarland's liability. Colfax reasoned that when McFarland instructed Johnson to back up, McFarland was a "user" of Johnson's vehicle as defined by Continental's policy. A garnishment was issued against Continental.

Continental answered and denied that its policy provided coverage for McFarland's conduct.

The parties agreed that the district court must address three issues: (1) the comparative fault of McFarland and Johnson in relation to Continental as garnishee; (2) whether Continental's policy covered McFarland's conduct; and (3) if Continental's policy covered McFarland's conduct, whether its policy provided primary, secondary, or pro rata coverage.

In a July 8, 1997, memorandum decision, the district judge found that while directing Johnson to back up, McFarland was "using the vehicle." Under these circumstances, Continental's policy provided coverage for McFarland. The judge then concluded that Continental's coverage was primary. The district judge stated: "If the garnishee wishes to present further evidence and argument on the comparative fault of Johnson and McFarland, its counsel should notify all concerned parties and schedule a hearing for that purpose."

A hearing was set and Continental and Colfax filed briefs pertaining to the assessment of fault between the defendants. The district court's journal entry of judgment allocated 30 percent fault to Johnson and 70 percent fault to McFarland. It then assessed 40 percent of McFarland's fault as to her services as a caretaker, and 30 percent of her as a volunteer lookout for Johnson and allocated $22,500 to McFarland's fault as a lookout. The district judge then observed that Colfax had previously received partial payment on the judgment against McFarland ($2,500 from Shelter Insurance) and granted Colfax a $21,200 judgment (including interest) against Continental.

Continental appealed to the Kansas Court of Appeals, contending, among other things, that (1) the district court erred in finding that its policy provided liability coverage to McFarland; (2) the district court was without statutory authority to modify its original judgment, and (3) the district court erred in allocating McFarland's fault between her duties as a caregiver and her duties as a lookout. The Court of Appeals affirmed the district court. Continental's petition for review was accepted.

In the district court, the parties stipulated to the facts. The resolution of the issue of coverage requires an interpretation of the Continental insurance policy. The interpretation of a written insurance policy based on stipulated facts is a question of law over which an appellate court has unlimited review. *United Services Auto Ass'n v. Morgan*, 23 Kan. App. 2d 987, 992, 939 P.2d 959 (1997).

In concluding that Continental provided liability coverage to McFarland as a "user" of Johnson's truck, the district court reasoned:

"The defendant McFarland was acting as a surrogate to Defendant Johnson in attempting to maintain a lookout to the rear to facilitate the safe use and/or control of the vehicle. In effect Johnson was borrowing the 'sensory perceptions' of McFarland in performing his duty. The resulting injury from the departure of the duty was caused by the use and/or control of the vehicle.

"McFarland was being used by Johnson in the use or control of the vehicle. Johnson was responding to her directions and orders of backing or not backing. She was therefore at that moment "using" the vehicle to the extent contemplated by the policy. This is a liberal and broad interpretation of the policy to afford the greatest possible protection to the insured. See *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580 [, 584 P.2d 1264 (1978)]."

In its analysis, the Court of Appeals discussed *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374 (1991). The question in *Dawson* was whether the injured plaintiff driver was entitled to uninsured motorist protection benefits under his insurance policy for actions of a phantom driver who had signaled Griffin, the defendant driver, to proceed with a left-hand turn. The phantom driver's signal for Griffin to turn left caused the accident. Dawson filed an action against Griffin and Dawson's own insurance carrier, seeking uninsured motorist benefits. Dawson settled with Griffin. Griffin was dismissed from the lawsuit.

Dawson's insurer responded that the phantom truck driver's hand motion was simply a courteous act and that Griffin's misinterpretation of the trucker's motion, as a matter of law, should not be permitted to support a contention of the trucker's negligence. The district court observed that K.S.A. 8-1527 created a duty requiring the defendant Griffin to yield the right-of-way to Dawson's oncoming vehicle. It concluded that Griffin could not delegate to

the phantom driver the duty to yield the right-of-way. The district court found that the phantom driver owed no duty to Dawson, therefore, it had no liability. The court granted summary judgment to Dawson's insurer. 249 Kan. at 117. Dawson appealed.

In reaching its decision, the *Dawson* court also applied a duty analysis to determine if uninsured motorist protection of plaintiff Dawson's policy covered negligent acts of the phantom driver. The *Dawson* court agreed with the trial court that the defendant driver had a nondelegable duty to yield to oncoming traffic while making a left hand turn. 249 Kan. at 122. It concluded that if the phantom driver had no duty to the plaintiff, Dawson was not entitled to uninsured motorist protection benefits of his insurance policy.

After its discussion of *Dawson*, the Court of Appeals noted that Johnson had used an "extra precautionary measure" and asked McFarland to look for children behind the truck before backing out. It found that under these circumstances both McFarland and Johnson, had *use or control* of the truck at the time of the accident. The Court of Appeals then concluded that because McFarland had use and control of Johnson's pickup, Continental also provided insurance coverage to McFarland.

Were McFarland and Johnson both exercising use and control of Johnson's vehicle? If so, was McFarland an insured under Johnson's Continental insurance policy or acting as a volunteer lookout—protecting the children under her care from being injured by a backing car?

An insurance policy is construed to give effect to the intention of the parties. *Brumley v. Lee*, 265 Kan. 810, 812, 963 P.2d 1224 (1998). If the policy is not ambiguous, it is enforced as made, but if it is ambiguous, it is given the construction most favorable to the insured. 265 Kan. at 812-13. The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997).

Continental's insurance policy defines "insured" as "[a]ny person using 'your covered auto.' " "You" and "Your" are defined as the

policy's "named insured and spouse." There is no dispute that Johnson was the "named insured" in the policy.

The term "using" is not defined in the policy. In its analysis, the Court of Appeals did not address the language of the insurance policy, or apply the test for "use" articulated in *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580, 584 P.2d 1264 (1978).

In *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, an action arose out of an automobile accident caused by a passenger who grabbed the steering wheel. The passenger claimed her act was covered by both the driver's automobile insurance and her automobile insurance policy. The district court ruled (1) the passenger's action of grabbing the steering wheel of the vehicle in which she was riding constituted "use" of the vehicle within the meaning of her policy providing coverage for her use of any automobile, and (2) the passenger's action of grabbing the steering wheel deviated materially from permission granted to her to ride in the vehicle and she was not afforded liability coverage by the omnibus clause of the driver's automobile liability policy. The passenger's insurer appealed.

The Court of Appeals found that a passenger who had yanked the steering wheel had taken control of the vehicle and operated or used the vehicle within the terms of the passenger's automobile insurance policy. In reaching this conclusion, the Court of Appeals reasoned:

"[T]he court 'must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected.' In *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 411 P.2d 616 (1966), the term 'use' was said to be a broad catchall designed and construed to include all proper uses of the vehicle. One treatise has defined 'use' as '[a]ny exercise of control over the vehicle constitutes a use, regardless of its purpose, extent, or duration.' [Citation omitted.]" 2 Kan App. 2d at 582.

The Court of Appeals concluded:

"We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and under-

standing which ordinary laymen would give to an insurance policy."
2 Kan. App. 2d at 583.

Here, McFarland informed the driver of the pickup that it was
safe to back the truck out of the driveway. McFarland did not have
physical control of the pickup truck.

In *Apcon Corp. v. Dana Trucking, Inc.*, 251 Ill. App. 3d 973,
623 N.E.2d 806 (1993), *appeal denied* 154 Ill. 2d 557 (1994), the
Illinois court considered whether the general contractor's em-
ployee who directs—through the use of hand signals—the backing
up of a subcontractor's truck which resulted in the truck striking
and killing another person, was a "user" of the truck within the
coverage of its and the subcontractor's liability insurance policy.

Plaintiffs Apcon Corporation (Apcon) and its liability insurer
filed for declaratory judgment. Apcon claimed that it was entitled
to coverage under a liability insurance policy issued to defendant
subcontractor Dana Trucking, Inc. (Dana), by Northland Insur-
ance Company (Northland) with respect to a wrongful death action
filed by the estate of the deceased because Apcon's actions, *i.e.*,
directing the truck at the time of decedent's injury, constituted
"use" of one of the subcontractor's vehicles within the meaning of
the subcontractor's liability policy.

The parties filed cross-motions for summary judgment. The trial
court granted Northland summary judgment, finding as a matter
of law Northland did not owe a duty to defend or indemnify Apcon
because Apcon was not an "insured" under the subcontractor's
policy.

Apcon maintained on appeal that the trial court erred in con-
cluding that Apcon was not a permissive user of the trucking com-
pany's vehicles when its employee acted as a "spotter" and di-
rected—through the use of hand signals—the backing up of the
subcontractor's truck, so that the truck struck and killed the de-
cedent.

Apcon asserted it controlled the subcontractor's truck in two
ways: First, Apcon determined whether the truck could be on the
construction site; and second, it determined what materials were
to be delivered, where those materials would be loaded, where they
would be unloaded, and it provided a spotter who used hand signals

to the backing truck to guide the vehicle. Apcon argued that under these circumstances, the spotter and the driver were jointly operating or driving the truck at the time of the accident.

Apcon cited cases from other jurisdictions in support of its contention that a spotter who uses hand signals to guide the driver of a truck is "using" the vehicle, such that he would be an additional insured. For example, *Liberty Mutual Ins. Co. v. Steenberg Construction Co.,* 225 F.2d 294 (8th Cir. 1955), was a case construing Minnesota law, where a general contractor was seeking indemnity from a subcontractor following a judgment in a personal injury action. The court determined that in the absence of any controlling local criteria, liability insurance policy language similar to that in the instant case provided coverage to a general contractor who directed the movements of a subcontractor's truck, by supervising and signaling from the rear of the truck. The trial court held and the Eighth Circuit affirmed that the directing by the general contractor of the backward movement of the truck made the participation of the general contractor such an immediate part of the actual operating of the truck as to make the general contractor "a person 'using the automobile', or in any event a person 'legally responsible for the use thereof', within the language and coverage of the omnibus clause of the policy." *Steenberg,* 225 F.2d at 296.

Similarly, in *Woodrich Construction Co. v. Indemnity Insurance Co.,* 252 Minn. 86, 89 N.W.2d 412 (1958), the plaintiff insured (Woodrich) brought an action against three insurers to recover the amount it had paid in settlement of damages to a man injured when a subcontractor's truck backed over him. The jury awarded the injured plaintiff $80,000 against the general contractor, Woodrich. The subcontractor and the driver of the truck were found not to be liable.

On appeal, the court noted that Woodrich assumed exclusive control over the truck the moment the truck entered into the congested area, because Woodrich employed the truck to carry out its own purpose of constructing a concrete pavement. The court determined Woodrich was "using" the motor vehicle by controlling or guiding its movement. 252 Minn. at 93-94.

The Illinois court noted that contrary to plaintiffs' assertion, because of the small number of cases that have raised this issue, there did not appear to be a clear minority/majority view. It then observed that *Wellman-Lord Engineers, Inc. v. Northwestern Mutual Insurance Co.*, 222 So. 2d 436 (Fla. Dist. App. 1969), was a similar action by a plaintiff general contractor seeking indemnification from subcontractor Redi-Mix Company's liability insurance.

In *Wellman*, the plaintiff general contractor was in the process of constructing an underground vault. John Atkins, an employee of the general contractor, was in charge of directing the unloading of concrete trucks. Atkins directed a truck driven by Joseph Gates, an employee of Redi-Mix, alongside the pit. Gates had been instructed by Redi-Mix to rely upon an employee of the general contractor for directions in backing the truck alongside the pit prior to unloading. Atkins negligently directed Gates to back the truck too close to the edge of the pit. The truck fell in the pit, damaging the truck, and injuring Gates.

The subcontractor liability insurance policy defined the word "insured" in virtually the same language as that used in the Northland policy in question. Citing *Woodrich* as authority, the general contractor contended it was "using" Redi-Mix's truck within the meaning of the policy when the truck fell into the pit.

No Florida case on this point was cited or found. The *Wellman* court noted that although *Woodrich* supported the general contractor's contention, the weight of authority and better view was to the contrary. The Florida court held that merely giving directions for a movant is not such "use" of the truck within the truck's liability insurance coverage. *Wellman*, 222 So.2d at 438.

The Illinois court observed that no Illinois case had been cited where a court had determined a general contractor's directing the movements of a subcontractor's truck through use of hand signals was a "use" of the truck under a policy with similar language. The Illinois court pointed out that if general contractor's interpretation were to be given to the subcontractor's policy, a store employee's directing a delivery truck where to park by pointing, or a police officer directing a motorist where to go by hand signals, would also be a "use" of a vehicle within the meaning of similar policies. It

concluded that in order to constitute a "use" or to be a "user" under the policy, such as to be an insured, one must be in operation of the vehicle and affirmed the trial court. The Illinois court rejected the reasoning of Woodrich and concluded that *Wellman* was properly decided and determined that Apcon was not a user of the subcontractor's vehicle within the meaning of the Northland policy.

The reasoning of *Apcon* is sound. The *Dawson* court determined that when a person takes physical control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy. Following the rationale of *Dawson*, to constitute a "use" or to be a "user" under the policy, such as to be an insured, one must be operating the vehicle. McFarland was a lookout. She did not have physical control of the vehicle; therefore, she was not "using" the vehicle at the time of the accident. McFarland is not an "insured" under the Continental policy. Her duty was as caretaker of the child. Since McFarland is not an insured under the policy, the other issues need not be decided.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

SIX, J., not participating.

STEVE LEBEN, D. J., assigned.