No. 88,859

WADE SCHARTZ, *Appellee,* v. KANSAS HEALTH INSURANCE
ASSOCIATION, *Appellant.*

66 P.3d 866

Opinion filed April 18, 2003.

*Steve E. Johnson,* of Law Offices of Bauer, Pike, Pike & Johnson, Chtd., of Great Bend, argued the cause and was on the brief for appellant.

*Jerry M. Ward,* of Ward Law Office, of Great Bend, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: In this appeal by the Kansas Health Insurance Association (KHIA), we are required to interpret the language of a health insurance policy that the trial court found to be ambiguous. The facts involved are either undisputed or stipulated.

The interpretation of a written insurance policy based on stipulated facts is a question of law over which this court has unlimited review. *Colfax v. Johnson,* 270 Kan. 7, 10, 11 P.3d 1171 (2000); *United Services Auto. Ass'n v. Morgan,* 23 Kan. App. 2d 987, 992, 939 P.2d 959, *rev. denied* 262 Kan. 969 (1997).

Wade Schartz had a history of coronary artery disease. In November 1995, he underwent an angioplasty/heart catheterization procedure. A follow-up examination in April 1996 noted that Schartz' current medications included: Zocor (used to lower cholesterol levels and help prevent coronary atherosclerosis [blockage of the heart's arteries]), Procardia (calcium channel blocker used to treat angina and high blood pressure), Persantine (used to prevent blood cells from clotting and to prevent chest pain), and baby aspirin. It is undisputed that he took these medications through 1996.

On October 8, 1996, Schartz submitted an application for health insurance coverage to the administrator of the KHIA. The application contained the following language regarding preexisting conditions:

"Your policy will not cover expenses incurred during the first 90 days after its Policy Date for a pre-existing condition. A pre-existing condition is:
  (a) a sickness or condition which manifested itself within the six-month period before the Policy Date in such a way as would cause an ordinarily prudent person to seek diagnosis, care or treatment from a practitioner; or
  (b) a sickness or condition for which medical advice, care or treatment was recommended by or received from a practitioner within the six-month period before the Policy Date."

Schartz noted in his application for coverage that within the last year he had taken the medications previously mentioned.

Schartz was issued a policy under the KHIA effective November 1, 1996. The policy stated in part:

"PART G.   PREEXISTING CONDITIONS LIMITATIONS
"Your policy will not cover expenses incurred during the first 90 days after its Policy Date for a preexisting condition. A preexisting condition is:
  (a) a sickness or condition which manifested itself within the six-month period before the Policy Date in such a way as would cause an ordinarily prudent person to seek diagnosis, care or treatment from a practitioner; or

(b) *a sickness or condition for which medical advice, care or treatment was recommended by or received from a practitioner within the six-month period before the Policy Date.*

"We will pay only for Eligible Expenses incurred after such 90 day period. Payment will be in accord with the provisions of this policy. However, if you were covered under another policy which provides hospital, medical or surgical expense benefits and coverage under that policy terminated less than 31 days prior to coverage beginning under this policy, the 90 day period will be waived to the extent the pre-existing condition limitation period was satisfied under the previous policy." (Emphasis added.)

In December 1996, Schartz was hospitalized for coronary artery bypass grafting. KHIA denied coverage for the hospital bill and obtained refunds for funds inadvertently paid on the December 1996 hospitalization.

Schartz appealed to a KHIA grievance committee, which agreed the claim should be denied, stating in part:

"The Committee finds that Mr. Schartz was treated with medication for a diagnosed condition of coronary artery disease and hyperlipidemia during the six months immediately prior to his enrollment in KHIA. . . . Therefore, a 90 day pre-existing condition exclusion for expenses associated with coronary artery disease and hyperlipidemia is appropriate. The pre-existing condition exclusion was satisfied January 29, 1997.

"The coronary artery bypass performed on December 2, 1996 was related to the diagnosed conditions of coronary artery disease and hyperlipidemia for which he was being treated by medication."

The third party administrator attempted to explain to Schartz' attorney the basis for the denial by letter, which stated in part:

"The preexisting condition exclusion was exercised for Mr. Schartz because he was being treated for a medical condition with medications during the six months prior to his effective date with the Kansas Health Insurance Association plan. This exclusion is not limited by the severity of the disease being treated nor by the natural progress of the disease. The pertinent fact is that Mr. Schartz was being treated for a medical condition during the six months prior to his effective date with the plan; and these same conditions necessitated surgery during the first 90 days of his policy. Therefore the preexisting condition exclusion correctly remains in force"

Schartz filed suit. The sole issue before the trial court is the same issue before us—whether the policy provided Schartz coverage given the facts, medical records, and timing of medical events. The

trial court found the insurance policy to be ambiguous as to whether the preexisting exception should apply in this situation and granted judgment for Schartz.

KHIA appealed, and we transferred the appeal pursuant to K.S.A. 20-3018(c).

KHIA argues that the policy was not ambiguous and that Schartz was excluded from coverage by the wording of the policy in that he was receiving ongoing treatment for coronary artery disease, as evidenced by (1) his regimen of prescription drugs and (2) the continued monitoring (of his coronary disease) by regular, scheduled checkups, all within 6 months of the issuance of the policy.

Schartz contends, and the trial court agreed, that the term "treatment" is ambiguous. He also asserts that there is a public policy argument to support the trial court's ruling.

Schartz' public policy argument is based on the Kansas Uninsurable Health Insurance Plan Act (KUHIPA), K.S.A. 40-2117 *et seq.* Schartz is correct that K.S.A. 40-2117 and the provisions following that statute set up a plan to provide insurance for Kansans who would otherwise be uninsurable or have great difficulty obtaining affordable insurance. However, Schartz is not correct that the KUHIPA mandates coverage or that the coverage have no exclusions or conditions.

It is important to note that the legislature specifically provided for an exclusion for preexisting conditions that is similar to language set forth in the policy, the application for coverage, and the brochure for the coverage plan in this case.

"On or after May 1, 1994, coverage under the plan shall exclude charges or expenses incurred during the first 90 days following the effective date of coverage as to any condition: (1) Which manifested itself during the six-month period immediately prior to the application for coverage in such manner as would cause an ordinarily prudent person to seek diagnosis, care or treatment; or (2) for which medical advice, care or treatment was recommended or received in the six-month period immediately prior to the application for coverage." K.S.A. 40-2124(c).

The brochure describing the coverage plan, the application for coverage, and the policy all clearly provide that expenses incurred during the first 90 days as a result of a preexisting condition, which

includes a sickness or condition for which treatment was received during the previous 6-month period, are excluded from coverage.

Our focus, given the policy language, is whether Schartz was receiving "treatment" for a sickness or condition during the period of time coverage was excluded.

An insurance policy is construed as to give effect to the intention of the parties. If the policy is not ambiguous, the court does not remake the contract but enforces the contract as made. If the policy is ambiguous, the policy is given the construction most favorable to the insured. *Colfax*, 270 Kan. 7, Syl. ¶ 2.

The test in determining whether an insurance policy is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Cannon v. Farmers Ins. Co.*, 274 Kan. 166, 172, 50 P.3d 48 (2002).

The determination of whether an insurance policy is ambiguous is a question of law. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002).

"Treatment" is not specifically defined within the terms of the policy. Black's Law Dictionary 1502 (6th ed. 1990), defines "treatment" as: "A broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." Webster's defines "treatment" as "the action or manner of treating a patient medically or surgically." Webster's Third New International Dictionary 2435 (1967).

The term "treatment" as used within the insurance policy in this case is not ambiguous. It is clear that treatment includes medication used to treat a disease or injury. There are not two or more possible meanings of the term "treatment" that a reasonably prudent person could have thought applicable in interpreting this policy. Unless contrary intent is shown, words in an insurance policy are to be given the natural and ordinary meaning they convey to the ordinary mind. *Harmon v. Safeco Ins. Co. of America*, 24 Kan. App. 2d 810, 812, 954 P.2d 7 (1998).

This conclusion is consistent with the language of K.S.A. 40-2124(c), which noted an exclusion for preexisting conditions, pre-

sumably as a method to place some limits on KHIA's exposure to claims.

We conclude there is no ambiguity here and that Schartz had received "treatment." This treatment was ongoing during the 6 months prior to the effective date of the policy; therefore, the pre-existing conditions exclusion must be recognized.

We will not remake the contract between the parties and will enforce the contract as written.

Reversed.

ABBOTT, J., not participating.

KNUDSON, J., assigned■