(168 P.3d 607)
No. 96,316

KEMPER INSURANCE COMPANIES, *Plaintiff*, v. DANIEL WEBER; HEATHER WEBER; SANDRA TAYLOR-PAHL, f/k/a SANDRA TAYLOR; THEODORE PAHL; and JENNIFER LUND, *Intervenors/Appellees/Cross-appellants*, v. FARMERS INSURANCE COMPANY, INC., *Appellant/Cross-appellees*.

Opinion
filed October 12, 2007.

*Craig Kennedy,* of Johnson, Kennedy, Dahl & Willis, of Wichita, for appellant/cross-appellee.

*Stephen L. Brave,* of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellees/cross-appellants Daniel and Heather Weber.

*Vito C. Barbieri,* of Barbieri & Associates, L.C., of Shawnee, for appellees/cross-appellants Sandra Taylor-Pahl and Theodore Pahl.

*Benoit M.J. Swinnen,* of Ralston, Pope & Diehl, L.L.C., of Topeka, for appellee/cross-appellant, Jennifer Lund.

Before CAPLINGER, P.J., ELLIOTT, J., and BUKATY, S.J.

CAPLINGER, J.: Defendant/appellant Farmers Insurance Company (Farmers) appeals the district court's ruling finding Farmers estopped from denying coverage to the unlisted driver of a rental car rented by its insured. The individuals injured in the car accident, the intervenors/appellees, filed a cross-appeal challenging the district court's ruling that the insured's policy with Farmers did not provide liability coverage for the driver's negligence.

*Factual and procedural background*

What should have been an enjoyable weekend spent among friends instead spawned nearly 7 years of litigation, culminating in this appeal. On September 29, 2000, Sandra ("Sandy") Taylor, now Taylor-Pahl, rented a passenger van from Thrifty Rent-A-Car in Kansas City and invited a group of friends to drive to a football game in Boulder, Colorado. She designated Theodore "Ted" Pahl as an additional driver on the rental agreement and declined to purchase the insurance.

The group included Sandy, Ted, Emily Hatchett, Daniel Weber, Heather Weber, and Jennifer Lund. They all agreed to take turns driving.

Ted drove the first leg, and Sandy drove the second. Emily took the wheel in Colby, Kansas.

According to the Kansas Highway Patrol's accident report, Emily lost control of the van at approximately 11:40 p.m. while attempting to avoid a tumbleweed. The van veered left, right, and then into a ditch where it rolled several times before coming to rest. Three of

the passengers were ejected; Emily was trapped inside. All sustained significant injuries.

At the time of the accident, Sandy owned a vehicle insured by Farmers. Emily owned a vehicle insured by Kemper American Motorists Insurance Company, d/b/a Hedges (Kemper).

Kemper tendered Emily's policy limits of $300,000, which the Douglas County District Court divided pursuant to a stipulated allocation order. The allocations were made with the understanding plaintiffs suffered injuries in excess of $300,000.

Farmers, without any reservation of rights, paid Thrifty $20,420 for the damaged van, and Sandy paid the $300 deductible required by her Farmers policy. Farmers also paid the cost of Sandy's defense in a civil suit initiated against her by Daniel and Heather Weber.

Each of the passengers—Sandy, Ted, Dan, Heather, and Jennifer—filed personal injury suits against Emily seeking damages for their medical expenses. The Webers' suit, as noted above, also named Sandy as a defendant. These suits have been consolidated and stayed in the Douglas County District Court pending resolution of this action.

Farmers denied coverage for any of the injuries, and refused to participate in the suits against Emily. It specifically denied that its policy with Sandy extended liability coverage to Emily. Farmers informed Kemper that Emily's policy with Kemper was primary, because Emily was the driver and the negligent tortfeasor.

Kemper filed a petition for declaratory judgment against Farmers, seeking (1) an adjudication of Farmers' obligations under its policy; (2) an order requiring Farmers to defend Emily in the intervenors' personal injury lawsuits and to pay any judgment entered against Emily; and (3) an award of attorney fees to Kemper.

Shortly after Farmers filed its answer, Dan, Heather, Sandy, Ted, and Jennifer each sought to intervene. Kemper sought to dismiss its claim without prejudice so as not to affect the intervenors' claims.

The parties agreed to a stipulated journal entry dismissing plaintiff Kemper without prejudice, entering a combined scheduling order, and granting intervention, thus permitting the intervenors

to continue their action against Farmers. The intervenors then filed "new" petitions for declaratory judgment against Farmers, seeking coverage for Emily's negligence under Sandy's policy.

The intervenors also filed a motion for summary judgment. Farmers filed its own summary judgment motion, and the parties traded briefs and memoranda on the summary judgment issues.

### The district court's decision

At a hearing on the motions, the district court found Sandy had been the "trip boss"; *i.e.*, she directed who drove and when. The district court further concluded that at the time of the accident, Sandy was "using" the vehicle in the sense that she was being transported to the game, even though Emily was driving.

The district court then considered Farmers' policy, which defined "insured car" as follows:

" 'Your insured car, as used in this part, shall also include any other private passenger car, utility car, or utility trailer not owned by or furnished or available for the regular use of you or a family member. But no vehicle shall be considered as your insured car unless there is sufficient reason to believe that the use is with permission of the owner and, unless it is *used by you or a family member.*' " (Emphasis added.)

The district court acknowledged the intervenors' argument that the rental van might be considered an "insured car" because Sandy, as a passenger, was "using" it. Nevertheless, the court concluded that because Sandy was not operating the vehicle at the time of the accident, she was not a "user" for insurance purposes. Therefore, the district court determined Sandy's policy with Farmers did not extend coverage to Emily and granted Farmers' motion for summary judgment on this ground.

Regarding the intervenors' estoppel argument, the district court held that although Farmers paid for the damaged van and defended Sandy in a lawsuit without reserving any rights, the intervenors did not detrimentally rely on these actions. Moreover, the district court concluded estoppel could not be employed to expand the coverage of an insurance policy or alter the rules of contract construction. Therefore, the district court also granted Farmers' motion for summary judgment on this ground.

The intervenors filed motions to reconsider. Following a hearing, the district court affirmed its earlier ruling in favor of Farmers on the coverage issue. However, after concluding it had not properly addressed the estoppel issue, the district court ruled in favor of the intervenors, reasoning Farmers' act of reimbursing Thrifty for the cost of the van essentially acknowledged the van was an "insured car" under Sandy's insurance policy. The district court also found persuasive Farmers' admission in correspondence that an "insured person" includes "any person using your insured car."

In granting the intervenors' motion for summary judgment on the estoppel issue, the district court rejected Farmers' argument that the intervenors did not detrimentally rely on Farmers' act of paying for the van. The court further rejected Farmers' suggestion that the doctrine of estoppel cannot apply to expand insurance coverage.

Farmers appeals the district court's ruling in favor of the intervenors on the estoppel issue, and the intervenors cross-appeal the district court's ruling in favor of Farmers on the issue of coverage under the contract.

*Standard of review*

This court's standard of review is well established:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citation omitted.]' [Citation omitted.]" *Nungesser v. Bryant,* 283 Kan. 550, 566, 153 P.3d 1277 (2007).

The parties agree the essential underlying facts are undisputed. The disputed issues involve the district court's conclusions of law, particularly its interpretation of the insurance contract and its ap-

plication of the doctrine of equitable estoppel. These pure questions of law command this court's unlimited review. See *Nungesser*, 283 Kan. at 566; *Narron v. Cincinnati Ins. Co.*, 278 Kan. 365, 369, 97 P.3d 1042 (2004).

*Coverage issue*

We first consider the issue raised by the intervenors in their cross-appeal, *i.e.*, whether the district court erred in finding Sandy's policy with Farmers did not extend coverage to Emily.

If the language of an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used. *Warner v. Stover*, 283 Kan. 453, 456, 153 P.3d 1245 (2007); *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003); *Jones v. Reliable Security, Inc.*, 29 Kan. App. 2d 617, 626-27, 28 P.3d 1051, *rev. denied* 272 Kan. 1418 (2001). An ambiguity does not exist merely because the parties disagree on the interpretation of the language. *Marshall*, 276 Kan. at 111; *Jones*, 29 Kan. App. 2d at 627.

Here, Farmers agreed to insure Sandy subject to the terms of the policy. The liability section's omnibus clause evidences Farmers' agreement to

"pay damages for which any *insured person* is legally liable because of bodily injury to any person, and/or property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.

"We will defend any claim or suit asking for these damages." (Emphasis added.)

The term "insured person" is defined in the liability section of the policy as:

"1. You or any family member.
"2. Any person using your insured car.
"3. Any other person or organization with respect only to legal liability for acts or omissions of:
"a. any person covered under this part while using your insured car."

Under this definition, Emily was "using" the car, but was an "insured person" only if she was driving an "insured car." The policy defined "insured car" as follows:

"Your insured car, as used in this part, shall also include any other private passenger car, utility car, or utility trailer not owned by or furnished or available for the regular use of you or a family member. But no vehicle shall be considered as your insured car unless there is sufficient reason to believe that the use is with permission of the owner, and *unless it is used by you or your family member.*" (Emphasis added.)

Under the plain language of the general provisions, the named "insured" was the then-unmarried Sandy and the insured vehicle was her 1991 Nissan Sentra. For purposes of liability, however, the "insured person" was anyone using Sandy's "insured car." While the rental car was a "private passenger car" not owned by Sandy or furnished or available for her regular use, under the omnibus clause the rental vehicle was not considered an "insured car" unless there was "sufficient reason to believe that the use" was permitted by the owner, and it was *"used by"* Sandy or her family member.

Here, the rental contract in Sandy's name provided sufficient reason to believe Sandy's use was with Thrifty's permission. The question at issue in this appeal, however, is whether the car was being "used by [Sandy]" at the time of the accident.

The insurer assumes the duty to define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured. *Marshall*, 276 Kan. at 112. "Unclear and obscure clauses in a policy of insurance should not be allowed to defeat the coverage reasonably to be expected by the insured." *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 792, 457 P.2d 34 (1969).

In this case, we can comfortably conclude Sandy reasonably would have expected her insurance policy to cover damage to her rental vehicle and injury to herself and other passengers so long as she was driving the vehicle. But the more difficult question is whether Sandy reasonably would have expected her insurance policy to cover injury to herself and other passengers occurring while another person was driving the rental car?

The district court found Sandy was the "trip boss" and thus was in control of and "using" the vehicle. Nevertheless, relying upon *Colfax v. Johnson*, 270 Kan. 7, 11 P.3d 1171 (2000), the district court concluded Sandy was required to be "in operation of" the vehicle to be considered a "user." Because the vehicle was not operated by Sandy at the time of the accident, the district court found Sandy's insurance did not cover Emily's liability.

In *Colfax*, the insured, James Johnson, was preparing to leave Ruth McFarland's residence in his truck. McFarland cared for six children at her home, and Johnson asked her to check and see if any of the children were playing near his truck before he backed up. McFarland signaled Johnson the path was clear, but unbeknownst to either of them a child was underneath the truck and was severely injured. The child sought payment from Johnson's insurance company for McFarland's liability on the theory that when McFarland instructed Johnson to back up, she was a covered "user" of the truck, and Johnson's policy covered her liability because it covered "any person using '[his] covered auto.' " 270 Kan. at 11.

On petition for review, our Supreme Court considered cases involving similar facts, *i.e.*, remote direction or signaling by a third party resulting in injury. Ultimately, the court held that because McFarland was acting as a lookout, she was not "using" Johnson's vehicle, and therefore was not an insured under Johnson's policy. 270 Kan. at 16. The court held: "In order to constitute a 'use' or to be a 'user' under an automobile liability insurance policy, such as to be an insured, one must be in operation of the vehicle." 270 Kan. 7, Syl. ¶ 4.

*Colfax* is initially distinguishable from the instant case in that the issue in *Colfax* did not concern whether the vehicle involved in the accident was an "insured vehicle." Rather, the issue there was whether a person standing outside the insured vehicle who was directing the driver could somehow be "using" the insured vehicle such as to be an "insured person." Here, there is no question that Emily was operating the vehicle and was an "insured person" so long as she was using an "insured car."

Further, we note *Colfax* cited and relied on Kansas cases wherein the courts have broadly treated the term "use" in the context of automobile insurance. For instance, in *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 392 P.2d 107 (1964), a geologist was struck and injured by a truck which had been unloaded at a job site and was being towed off the site. Our Supreme Court discussed the term "use" and stated the court "must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected." 193 Kan. at 11. Under these facts, the court held the truck was not being "used" at the time of the accident.

In *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 411 P.2d 616 (1966), the court considered whether the "ownership, maintenance or use" clause of a city truck's liability insurance policy covered an accident resulting from a cable stretched from a winch on the truck across the street to a utility pole, which injured a passing motorist. The *Alliance* court noted the noun *"use"*

" 'has been held to be synonymous with benefit and employment, and practically synonymous with enjoyment, and as a verb, it has a well-understood meaning and a legal significance, having been variously defined as meaning to employ, to employ for any purpose, to employ for the attainment of some purpose or end, to avail one's self of, to convert to one's service, or to put to one's use or benefit, and the infinitive *to use* has also been defined as to hold, occupy, enjoy, or take the benefit of.' " *Alliance*, 196 Kan. at 328 (quoting *Esfeld Trucking, Inc.*, 193 Kan. at 10-11).

Although the insured vehicle was stationary and held no passengers, the court in *Alliance* nevertheless held the truck was being "used" by the insured for purposes of coverage.

In *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580, 584 P.2d 1264 (1978), a passenger pulled on the steering wheel, causing the driver to lose control; the driver's insurance company was sued when it refused to extend liability coverage to the passenger 2 Kan. App. 2d at 581. In considering whether the passenger was an insured person because she was "using" the car at the time of the accident, this court held the

term "use" in a coverage clause of an automobile liability policy is given "broad, general and comprehensive meaning effecting broad coverage." 2 Kan. App. 2d at 582. The court held the term "use" was a "broad catchall" designed and construed to include "all proper uses" of the vehicle. 2 Kan. App. 2d at 582. Citing a treatise, the court found "use" includes "any exercise of control over the vehicle . . . regardless of its purpose, extent, or duration." 2 Kan. App. 2d 580, Syl. ¶ 2.

We find it significant that our Supreme Court in *Colfax* noted with approval the test for "use" articulated in *Fidelity*. And it applied that test to conclude McFarland, acting as a lookout, was not "using" the vehicle.

Under Farmers' policy, an insured person is defined as "any person using your insured car." "Your insured car" includes a rental car, so long as it is being "used by you." Farmers is obligated to "pay for damages for which any insured person is legally liable because of bodily injury to any person, and/or property damage arising out of the ownership, maintenance or use of a private passenger car."

Applying the *Fidelity* test approved in *Colfax*, it is clear Sandy was "using" the vehicle at the time of the accident. As the district court found, at the time of the accident Sandy was "using" the rented vehicle to transport herself and others to a football game in Colorado. Sandy rented the vehicle and required all passengers to wear their seatbelts. She decided who drove and when.

Therefore, we conclude that under Sandy's policy with Farmers, the rental vehicle was Sandy's "insured car." When Sandy handed the keys to Emily in Colby, Sandy's use of the car did not end; the car remained an insured car and continued to be used by Sandy. Thus, Sandy's liability coverage extended to Emily as an "insured person" who was using the "insured car."

Because the district court concluded Sandy's policy with Farmers did not extend coverage to a rental car driven by Emily, we reverse the district court's grant of summary judgment in favor of Farmers on this issue and grant summary judgment in favor of the intervenors on the coverage issue.

Based upon our decision, the estoppel issue raised in Farmers' appeal is moot. Accordingly, we hold summary judgment in favor of the intervenors was appropriate, although for a different reason than that found by the district court. See *In re Conservatorship of Marcotte*, 243 Kan. 190, 196, 756 P.2d 1091 (1988).

Affirmed.