# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2250

ROBERT E. STEPHAN, *et al.*,

*Plaintiffs-Appellants,*

v.

S. JAY GOLDINGER, *et al.*,

*Defendants,*

and

REFCO, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99 C 525—**Hon. Joan B. Gottschall,** *Judge,*
and **Hon. Samuel P. King**, *Judge.*

ARGUED FEBRUARY 10, 2003—DECIDED APRIL 8, 2003

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Ludwig Stephan, whose estate is one of the plaintiffs (we can disregard the others), opened a commodity futures trading account with defendant Refco (we can disregard the other defendants as well), lost his investment, and sued Refco, charging fraud in violation of the Commodity Exchange Act. The Act contains a two-year statute of limitations, 7 U.S.C. § 25(c), and the

plaintiff sued within two years (or so we may assume, though Refco, as an alternative ground for affirmance, argues that the plaintiff missed that deadline too). But Stephan's contract with Refco provided that no suit arising out of the contract or out of transactions made under its authority could be brought "more than one year after the cause of action arose," and this deadline the plaintiff admits having missed. The contract also provided that any dispute arising out of the contract or the transactions under it "shall be litigated at the discretion and election of Refco only in a court in Chicago." The plaintiff sued Refco in Nevada, and although the suit was duly transferred to Chicago in conformity with the clause just quoted, Refco counterclaimed for the legal expenses that it incurred in removing. Judge Gottschall, to whom the case was first assigned, granted Refco's motion for summary judgment on the plaintiff's claim, holding the claim barred by the contractual limitations period. Judge King later, after an evidentiary hearing, awarded Refco $9,067 on its counterclaim. The appeal challenges both rulings, certified by the district judges as final and thus appealable under Fed. R. Civ. P. 54(b). Other pieces of the suit, including other parties, remain before the district court.

The plaintiff argues that the two-year statutory limitations period is exclusive; it cannot be shortened by contract. There is no basis for such an interpretation in the language of section 25(c), which states simply that no suit shall be brought "later than two years after the date the cause of action arises." Despite this language, Refco could have agreed to a longer limitations period, *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166 (7th Cir. 1997); *Hunter-Boykin v. George Washington University*, 132 F.3d 77, 79-80 (D.C. Cir. 1998), because a statute of limitations is intended primarily for the benefit of the defendant, to protect him from having to defend against stale claims.

*United States v. Kubrick*, 444 U.S. 111, 117 (1979); *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2079 (2002); *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 893 (1988); *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995). "Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). A secondary purpose is to spare the courts the burden of having to adjudicate claims that because of their staleness may be impossible to resolve with even minimum accuracy. *Lawyers Title Ins. Corp. v. Dearborn Title Corp., supra*, 118 F.3d at 1166; *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 877 (7th Cir. 1997). That it is secondary is shown by the willingness of courts to enforce agreements to extend the limitations period.

There is no tertiary purpose of benefiting plaintiffs. There is not even a tiny handle in the statutory language for a bar against a potential plaintiff's agreeing to shorten the statutory period, and there is nothing in the policy of the statute of limitations either to which a plaintiff might appeal. It is of course true that the Commodity Exchange Act is intended for the protection of investors rather than brokers, but the statute of limitations in the Act limits that protection and is as deserving of judicial enforcement as the provisions that favor investors. A statute is a compromise and must be enforced as such, and thus with due recognition of the various interests that gained recognition in the legislative process.

Contractual provisions that exculpate a party from statutory liability are sometimes refused enforcement, e.g., *First American Discount Corp. v. CFTC*, 222 F.3d 1008, 1016-18 (D.C. Cir. 2000); see *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985), notably when they have adverse effects on third parties. Cf. *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 604 (7th Cir. 1994). But the contractual provision challenged in this case is not exculpatory. It would be as a practical matter had it said that suit must be brought within five minutes after the cause of action accrues. One year, however, is not an unreasonably short time for bringing a suit, *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1205 (7th Cir. 1992); *Cange v. Stotler & Co.*, 826 F.2d 581, 584-85 (7th Cir. 1987), at least given tolling doctrines that we assume, and Refco tacitly concedes, would be read into a contractual limitations period just as they are into a statutory one, unless negatived by clear language. *Doe v. Blue Cross & Blue Shield United of Wisconsin, supra*, 112 F.3d at 877; *Cange v. Stotler & Co.*, 913 F.2d 1204, 1209-10 (7th Cir. 1990); *Koclanakis v. Merrimack Mutual Fire Ins. Co.*, 899 F.2d 673, 675-76 (7th Cir. 1990); *Velez-Gomez v. SMA Life Assurance Co.*, 8 F.3d 873, 876 (1st Cir. 1993); but see *Curry v. Vanguard Ins. Co.*, 923 F.2d 484, 486 (6th Cir. 1991). Indeed, we pointed out in the *Blue Cross & Blue Shield* case that tolling doctrines make even more sense in a contractual than in a statutory limitations case, at least when the contractual limitations period is not tolled beyond the statutory limitations period, because as long as that condition is satisfied the *public* purpose of a limitations period—protecting the court, not just the parties, from the burden of adjudicating stale claims—is secure.

In fact the plaintiff pleaded equitable estoppel against enforcement of the one-year contractual limitation. It did so on the basis of statements made by Refco's lawyer and re-

ported in the *Wall Street Journal* denying liability. The plea fails. There is no evidence that Stephan read the article or otherwise learned of the statements, let alone that he relied on it or on them. And anyway a denial of liability is not a basis for equitable estoppel—otherwise a statute of limitations would never run unless the potential defendant confessed error before he was sued! *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002); *Bishop v. Gainer*, 272 F.3d 1009, 1014-15 (7th Cir. 2001); *Singletary v. Continental Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir. 1993).

Might the contractual truncation of the statutory limitations period be fraudulent or unconscionable? No. Stephan was not an impoverished or an unsophisticated investor, and the one-year limitations period was clearly set forth in the contract. Notice by way of comparison that the statute of limitations applicable to federal employment discrimination suits is only 180 or (in some states) 300 days. 42 U.S.C. § 2000e-5(e)(1). The plaintiff does cite to us to several Illinois cases that refuse to enforce contractual limitations periods in insurance contracts. *Severs v. Country Mutual Ins. Co.*, 434 N.E.2d 290 (Ill. 1982); *Kerouac v. Kerouac*, 425 N.E.2d 543, 548-49 (Ill. App. 1981); *Burgo v. Illinois Farmers Ins. Co.*, 290 N.E.2d 371, 374 (Ill. App. 1972). But they all arise out of suits for uninsured-motorist coverage, and are "unique" to that issue. *Kerouac v. Kerouac, supra*, 425 N.E.2d at 548-49. They reason that the purpose of the state's uninsured-motorist statute, which is to place the victim of an uninsured motorist in the same position he would occupy if the motorist were insured, creates a nonwaivable entitlement on the part of the victim of the uninsured motorist to the two-year statute of limitations governing suits against insured motorists. Whether or not this is sound reasoning, it is too remote from anything in this case to dictate our decision.

The plaintiff argues that if we uphold the one-year provision in Refco's contract, competition will force the rest of the commodities brokers to follow suit, to the great detriment of commodities investors as a class. This is an absurd argument. It is the equivalent of saying that if one seller in a competitive market reduces the quality of his product, competition will force the others to follow suit, so there will be a spiral downward. Why is it then that sellers like monopoly and consumers like competition? At argument the plaintiff's lawyer contradicted his own argument by stating that some brokerage houses have a one-year limitation and others do not, as one would expect. The shorter term is advantageous to the broker and presumably the customer is compensated, assuming there is competition among brokers—and of course there is.

Invoking the ubiquitous *Chevron* principle, the plaintiff notes that the Commodity Futures Trading Commission, which along with the courts enforces the Commodity Exchange Act, believes that one year is too short. *McGough v. Bradford*, 2000 WL 33675749, at *15-16 (CFTC Sept. 28, 2000). Setting to one side all other objections to supposing this view deserving of *Chevron* deference, we note that the Commission offered this opinion not with reference to section 25(c), which governs damages suits under the Act, such as this suit, but rather with reference to contractual curtailments of the two-year statute of limitations applicable to actions for reparations. This is an administrative remedy favored by small investors because it is cheap, *CFTC v. Schor*, 478 U.S. 833, 836 (1986); *Rosenthal & Co. v. CFTC*, 614 F.2d 1121, 1122-23 (7th Cir. 1980)—the administrative equivalent of a small claims court, *Myron v. Hauser*, 673 F.2d 994, 1001 (8th Cir. 1982)—but also (one reason it is cheap) difficult to activate within a year because of limitations on discovery. See 17 C.F.R. §§ 12.30-12.36; Kenneth M. Raisler & Edward S. Geldermann, "The CFTC's

New Reparation Rules: In Search of a Fair, Responsive, and Practical Forum for Resolving Commodity-Related Disputes," 40 *Business Lawyer* 537, 563 (1985). Although even in federal civil cases discovery takes place (with immaterial exceptions) after rather than before a suit is filed, the more limited that discovery is the more pre-litigation investigating a plaintiff must do, and so he needs more time before suing than if he had the usual expansive modern rights of discovery.

So much for the plaintiff's challenge to the contractual limitations period and we turn now to Refco's counterclaim based on the contractual venue provision. Such clauses generally are valid, see *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991), but the plaintiff argues that in this case "the clause was obviated by fraud." We cannot begin to understand the argument. This is a fraud case, all right, but the alleged fraud involves Refco's handling of the commodity futures trades made in the plaintiff's account; there is no contention that the *contract* was procured by fraud. Even if it were procured by fraud, the venue provision would be valid by analogy to the arbitrability of disputes arising out of contracts procured by fraud when there is no argument that the arbitration provision itself was procured by fraud. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002); *Great Earth Cos. v. Simons*, 288 F.3d 878, 889-90 (6th Cir. 2002); *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir. 1994). There isn't the remotest suggestion that the venue provision in Refco's contract with the plaintiff was a product of fraud.

The plaintiff missed a better argument. The venue provision does not state that any dispute must be litigated in Chicago—only that it must be litigated "at the election and

discretion" of Refco in Chicago. This is consistent with the plaintiff's having filed the suit elsewhere—for it might have filed it in a venue in which Refco would be perfectly content to litigate. To the extent that the plaintiff fought removal, it would be violating the venue provision, but not, as it seems to us, otherwise. However, the argument has been waived, so both rulings that the plaintiff has appealed from are

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*