FILED
United States Court of Appeals
Tenth Circuit

July 22, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JACK L. JONES; KAY A. JONES,

     Plaintiffs-Appellants,

v.

KP&H LLC, a Delaware limited
liability company; KPH, LLC, a
Georgia limited liability company; and
BRAD PENNY,

     Defendants-Appellees.

No. 07-3246
(D.C. No. 06-CV-1381-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MCKAY**, and **LUCERO**, Circuit Judges.

Plaintiffs-appellants Jack L. Jones and Kay A. Jones ("the Jones") filed this

breach-of-contract action in Kansas state court. Defendants-appellees KP&H,

LLC and Brad Penny removed the case to federal district court and then filed a

motion to dismiss the Jones' claims based on a choice of venue clause in the

contract. Interpreting this clause as providing for exclusive venue in San Diego

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

County, California, the district court granted defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's decision.

**I**

In June 2006, Jack and Kay Jones entered into an agreement to sell roughly 10,000 acres of land in Barber County, Kansas to KP&H, a Delaware Limited Liability Company based in San Diego, and Brad Penny, a citizen of Florida (collectively "KP&H"). This agreement, known as the Definitive Purchase Agreement ("DPA"), consisted of three documents: the Purchase Agreement, the Addendum to the Purchase Agreement and Joint Escrow Instructions ("First Addendum"), and the Second Addendum to the Purchase Agreement and Joint Escrow Instructions ("Second Addendum"). The issues in this appeal revolve primarily around four provisions of the DPA: Section 7 of the Purchase Agreement ("Section 7"), Section 13 of the Purchase Agreement ("Section 13"), Section 3 of the First Addendum ("Section 3"), and Section 4 of the Second Addendum ("Section 4").

Under the terms of the DPA, KP&H was required to deliver an Earnest Money Deposit ("Deposit") equaling $300,000 to an escrow agent prior to the sale of the property. The DPA then granted KP&H a 90-day period to inspect the property and examine the title. Section 7 gave KP&H the right to physically enter the property during this period "to inspect, examine, survey, and make test

-2-

borings, soil bearing tests, and any other soil or engineering tests or surveys which Purchaser may deem necessary . . . ."  This section states that "[a]t any time period [before] the expiration of the Inspection Period, Purchaser may terminate this Contract for any reason as a result of these inspections at the Purchaser's full and complete discretion."

In Section 3, the First Addendum clarifies that after the end of the inspection period, the Deposit would be transferred to the Jones.  After the inspection period, the Deposit would only be refunded to KP&H if the Jones defaulted or failed to satisfy their obligations under the contract.

Section 13.1 discusses the possibility of default by either of the parties.  If KP&H defaulted, the Jones were "entitled to retain the [Deposit] as liquidated damages and in full settlement of any claims or damages, except with respect to such provisions of Section 7 and 12.2."[1]  Further, the parties agreed that "without resale, Seller'[s] damages may be difficult to ascertain and that the [Deposit] constitutes a reasonable liquidation thereof . . . ."  If the Jones defaulted, however, KP&H was entitled to the return of the Deposit without any prejudice to its right to seek other kinds of relief, pursuant to Section 13.2.

---

[1] The reference to Section 12.2 was removed by the First Addendum because there is no Section 12.2 in the DPA.

In the event of a dispute between the parties, the DPA included a choice of venue clause, which provided for two different venues depending on the nature of the dispute. Section 4 states that

> (a) any dispute arising out of or relating to Buyer's Deposit or Earnest Money Deposit, or the release, failure to release, refund, return or collection of the same to or by Buyer shall be tried and litigated exclusively in the State and Federal Courts located in San Diego County, California . . . .
>
> (b) any dispute arising out of or relating to the purchase and sale of the Property shall be tried and litigated exclusively in the State and Federal Courts located in Barber County, Kansas . . . .

In addition to the DPA, the parties entered into a separate agreement with an escrow agent (the "Escrow Deposit Agreement"), containing instructions for the delivery and release of the Deposit. Under the terms of the Escrow Deposit Agreement, if

> the purchase and sale of the property is not consummated for any reason permitting a termination of the [DPA] other than a default under the [DPA] by Purchaser, the Deposit shall be refunded to Purchaser without any requirement of additional instruction from Seller . . . . Upon such termination, no party to this Agreement shall have any further right or obligation to the other.

On October 25, 2006, five days before the end of the inspection period, KP&H sent a letter to the Jones, notifying them that it was terminating the DPA and demanding refund of the Deposit. A copy of this letter was also sent to the escrow agent. In the letter, KP&H stated that it was terminating the agreement in

-4-

accordance with Section 7 "as a result of Buyer's due diligence investigation and inspections of the Property, and disapproval thereof." The letter then directed the escrow agent to return the Deposit to KP&H, which the agent did.

The Jones filed a breach-of-contract suit against KP&H in Kansas state court approximately one month later. They claimed that under Section 7 of the DPA, KP&H could only terminate the agreement as a result of the inspections specified in that section, that KP&H had never conducted any of the enumerated tests, and that KP&H had thus violated these terms of the contract. As relief, the Jones sought specific performance, return of the Deposit, or liquidated damages in the amount of $300,000. They also requested an additional $75,000, reflecting the cost of forbearance.

KP&H removed the case to the United States District Court for the District of Kansas and moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). In its motion, KP&H directed the court's attention to Section 4 and argued that because the Jones' dispute related to the disposition of the Deposit, venue was proper only in San Diego County, California.[2]

The district court agreed with KP&H and granted the motion to dismiss. Applying the venue provision of the agreement, the court reasoned that Barber

---

[2] Alternatively, KP&H urged dismissal for failure to state a claim under Rule 12(b)(6) because the Jones failed to allege that it had breached the terms of the contract. The Jones, in turn, sought remand to the state court. Because the district court determined that venue was not proper in Kansas, it did not rule on either of these arguments.

County was not the proper venue because the dispute did not arise out of or relate to the sale or purchase of the property as no sale had occurred. It also noted that the Jones' requested relief involved retention of the Deposit under Section 13.1's liquidated damages clause, and that the dispute therefore concerned the Deposit. Accordingly, it ruled that venue was proper in San Diego County. The Jones appeal.

## II

Review of dismissal for improper venue based on a contract's choice of venue clause presents a question of law which we consider de novo. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992); see also SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581 (10th Cir. 1997) (matters of contract interpretation are reviewed de novo).[3] We use the same standard applied to dismissals for failure to state a claim. See Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007); see also Nazaruk v. eBay, Inc., 223 Fed. App'x 815, 816 (10th Cir. May 15, 2007) (unpublished).[4] That is,

---

[3] Although the parties refer to Section 4 as a "forum selection clause," we deem it more properly termed a "choice of venue clause" or "venue provision," and refer to it as such. See SBKC, 105 F.3d at 582 (clarifying that the term "forum selection clause" refers only to "agreements which clearly confine litigation to specific tribunals," as opposed to specific venues which may contain multiple acceptable tribunals (emphasis added)).

[4] Unpublished cases are not precedential, but may be cited for their persuasive value. 10th Cir. R. 32.1. We cite Nazaruk for its persuasive value only.

we accept "all well-pleaded allegations as true and view[] them in the light most favorable to the plaintiff." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007).

Because the DPA provides that Kansas law governs the construction of its terms, we apply Kansas substantive law to this case. Yavuz v. 61 MM, Ltd., 465 F.3d 418, 427-28 (10th Cir. 2006). Under Kansas law, "[t]he cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of an instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision." Town Ctr. Shopping Ctr., LLC v. Premier Mortgage Funding, Inc., 148 P.3d 565, 572 (Kan. Ct. App. 2006). Kansas courts favor reasonable over unreasonable interpretations of the contract and "[r]esults which vitiate the purpose or reduce the terms of a contract to an absurdity should be avoided." Kan. State Bank & Trust Co. v. DeLorean, 640 P.2d 343, 349 (Kan. Ct. App. 1982). In this case, we consider the unified intent behind both the DPA and the Escrow Deposit Agreement because instruments that were "executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter . . . will be read and construed together." In re Villa West Assoc., 146 F.3d 798, 803 (10th Cir. 1998) (citing Akandas, Inc. v. Klippel, 827 P.2d 37, 51 (Kan. 1992)).

The parties do not dispute the binding effect of the venue provision; they question only its proper interpretation. Section 4(a) states that San Diego County

is the exclusive venue for litigating disputes "arising out of or relating to the [Deposit], or the release, failure to release, refund, return or collection of the same to or by the Buyer." Under Section 4(b), Barber County is the exclusive venue for disputes "arising out of or relating to the purchase and sale of the Property." The essential question is whether the Jones' breach-of-contract claim is best characterized as "arising out of or relating to" the proper disposition of the Deposit or the sale of the property.

The Jones claim that because the DPA governs the sale of the property, all disputes based upon provisions in the DPA necessarily arise out of or relate to the sale and fall under Section 4(b); by contrast, only disputes based upon terms in the Escrow Deposit Agreement can properly be characterized as relating to the Deposit under Section 4(a). KP&H disagrees, contending that the parties intended for all disputes arising before the sale to be litigated in San Diego County, and all disputes arising after the sale to be litigated in Barber County, where the property is located. Although the parties' representations regarding their intent are certainly relevant to our analysis, in this case neither party presents an interpretation of the contract that construes all the provisions in harmony and avoids reducing particular terms to an absurdity. Based upon our independent reading of the contract, we conclude that this dispute arises out of the release of the Deposit, and that venue is proper in San Diego County. We

-8-

begin with the plain language of the contract, and then turn to the parties'
proposed interpretations.

## A

The Jones claim that KP&H breached the contract by improperly
terminating the transaction before the end of the inspection period. Although the
DPA does not explicitly address the consequences of an <u>improper</u> termination
<u>during</u> the inspection period, it does discuss proper terminations during this
period and all other terminations after this period. From these provisions, we
determine that the parties intended to limit the scope of particular disputes arising
out of KP&H's termination prior to the sale of the property, such that the only
matter to be resolved between the parties would be the proper disposition of the
Deposit. This particular case falls within that set of disputes.

Under the terms of the contract, a proper termination by KP&H before the
end of the inspection period would result in the return of the Deposit to KP&H.
Section 7 permits KP&H to terminate the contract "[a]t any time period [before]
the expiration of the Inspection Period." The Escrow Deposit Agreement, which
we construe in conjunction with the DPA, <u>Akandas</u>, 827 P.2d at 51, states that if
"the purchase and sale of the Property is not consummated for any reason
permitting a termination of the [DPA] . . . the Deposit shall be refunded to
Purchaser . . . ." In addition, in the title examination provision of the DPA,
KP&H reserved the right to terminate prior to the expiration of the inspection

period if it found any uncorrectable defects in the title. Upon such termination "Escrow Agent shall immediately return to Purchaser the [Deposit]." Consequently, upon a proper termination, either for the reasons permitted in Section 7 or for a defect in title, KP&H would receive the Deposit from the escrow agent.

Once the Deposit was returned, the agreement would terminate and the parties would have no further obligations to each other. Both the title examination provision and the Escrow Deposit Agreement state that upon termination, "no party . . . shall have any . . . further rights or obligations" to the other. Reading the DPA and the Escrow Deposit Agreement together, we conclude that upon a proper termination by KP&H before the end of the inspection period, the parties intended for the Deposit to be returned to KP&H immediately and without dispute.

If, however, KP&H terminated the agreement under any other circumstances, but prior to the consummation of the sale, the Jones would receive the Deposit. This conclusion is supported by language in Section 13.1, Section 3, and the Escrow Deposit Agreement. Under Section 13.1, termination by KP&H before the sale would result in the agreement becoming "null and void and of no further force or effect," and the Jones would take the Deposit "in full settlement of any claims or damages." Section 3 provides that, after the end of the inspection period, the Deposit will be not be refunded to KP&H if it breaches the

DPA. The Escrow Deposit Agreement only allows return of the Deposit to KP&H if it terminated for a reason "other than a default under the [DPA] by Purchaser." By contrast, if the Jones defaulted at any point in time, under Section 13.2 the Deposit would be refunded to KP&H "without prejudice to any other rights or remedies of Purchaser, including without limitation, the right to seek specific performance of this Agreement."

Taken together, it is clear that the parties intended to limit the scope of disputes arising out of KP&H's presale termination. Although the Jones emphasize that KP&H terminated the contract improperly prior to the end of the inspection period, a claim which is not specifically addressed by the DPA, the most reasonable interpretation of the contract turns on which party terminated and when. So long as KP&H terminated the contract prior to sale, the only matter to be resolved between the parties was the proper transfer of the Deposit. In contrast, other types of disputes, perhaps arising out of a presale termination by the Jones or a postsale breach by either party, would not be so limited in scope, and might reasonably fall under Section 4(b)'s more general language. In light of this intent, we determine that Section 4(a) governs the dispute at issue here, which arose out of a presale termination by KP&H. Because Section 4(a) controls, venue is proper in San Diego County.

**B**

The parties have each proposed alternative interpretations of the contract, but these proposals are inconsistent with the language and intent of the DPA. The Jones assert that the parties intended for all disputes arising out of provisions in the DPA to be litigated in Barber County and that only disputes arising out of the Escrow Deposit Agreement would be litigated in San Diego County. They contend that the Escrow Deposit Agreement exclusively governs the "release, refund, return and collection" of the Deposit, as those terms are used in Section 4(a). By contrast, they argue, the DPA contains "contractual terms" that necessarily relate to the "purchase and sale" of the property, to which Section 4(b) applies. Because their claim arises out of an alleged breach of Section 7 of the DPA, the Jones maintain that Section 4(b) controls, and that venue is proper in Barber County.

This interpretation, however, conflicts with the plain language of the contract. Provisions governing the "release" and "refund" of the Deposit are not confined solely to the Escrow Deposit Agreement; they are also scattered throughout the DPA. For example, Section 3 of the DPA states that at the end of the inspection period, the escrow agent "shall immediately release to Seller" the full amount of the Deposit (emphasis added). If, however, the seller defaults, the Deposit "will be refunded to Buyer . . . " (emphasis added). Additionally, in a section of the DPA governing proper title, KP&H reserved the right to terminate the agreement for any title defects, "whereupon the Escrow Agent shall

-12-

immediately <u>return</u>" the Deposit to KP&H (emphasis added). Under the Jones'

theory, these provisions, which explicitly involve the release and refund of the

Deposit, would not fall under the "release" and "refund" language of Section 4(a).

Because the Jones' interpretation conflicts with the plain language of the contract,

it is necessarily unreasonable. See <u>DeLorean</u>, 640 P.2d at 349.

In a related argument, the Jones urge us to focus on the nature of their

cause of action, which they characterize as a suit for breach of a sale contract.

Because the breach "relates to" the sale of the property, they contend that venue

is proper in Barber County. While it is true on a general level that any breach of

the DPA "relates to" the sale, such a broad interpretation would render Section

4(a) meaningless. Principles of Kansas contract law prevent us from reading

Section 4(a) completely out of the contract. See <u>DeLorean</u>, 640 P.2d at 349.

Moreover, under the rule of ejusdem generis, we must interpret general provisions

in light of more specific provisions in a contract. See <u>Smith v. Russ</u>, 339 P.2d

286, 291 (Kan. 1959); <u>Exch. State Bank v. Kan. Bankers Sur. Co.</u>, 177 P.3d 1284,

1285 (Kan. Ct. App. 2008). In other words, Section 4(b)'s language regarding

disputes "arising out of or relating to the purchase and sale of the Property" must

refer to disputes other than those falling under the more specific provisions of

Section 4(a).

KP&H suggests that the application of the venue provision turns on the

consummation of the sale, with all presale disputes being litigated under Section

-13-

4(a) and all postsale disputes under Section 4(b). In support of its argument, KP&H directs us to Section 13.1, which sets liquidated damages for any breach by KP&H made prior to the sale. This section states that "[i]f the transaction contemplated herein is not consummated because of a default of Purchaser . . . Seller shall be entitled to retain the [Deposit] as liquidated damages and in full settlement of any claims or damages . . . ." Because the Jones' sole remedy for any breach of contract occurring before the sale was the Deposit, KP&H asserts that all such pre-sale disputes relate to the proper disposition of the Deposit and should be litigated in San Diego County.

The Jones counter that venue cannot depend on the remedy they sought, which included, among other things, the Deposit or the value of the Deposit as liquidated damages. In support of their argument, they cite a case holding that the application of a statute of limitations may not turn on the remedy requested. Four B Corp. v. Daicel Chem. Indus., Ltd., 253 F. Supp. 2d 1147, 1155 (D. Kan. 2003). They do not offer an authority, however, that prohibits parties from writing a contract in which venue turns on the remedy. Moreover, we see no reason why parties could not write such a contract. As a general matter, parties are free to adopt any contract terms they wish, so long as these terms are not illegal, contrary to public policy, or the result of fraud. See Augusta Med. Complex, Inc. v. Blue Cross of Kan., Inc., 608 P.2d 890, 895 (Kan. 1980). In some instances, they may even agree to terms that conflict with statutory

-14-

requirements, and Kansas courts will give effect to their agreement rather than the statute. See In re Estate of Sauder, 156 P.3d 1204, 1214 (Kan. 2007). As a matter of policy, we do not conceive of any reason why courts should prohibit parties from making venue provisions contingent on the remedy sought. See Stephan v. Goldinger, 325 F.3d 874, 878 (7th Cir. 2003) (holding that contractual venue clauses "generally are valid"). "Venue is not a substantive right, but is a procedural matter designed for the convenience of the litigants," 77 Am. Jur. 2d Venue § 1, and courts have previously allowed parties to contract similar procedural matters. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 591-95 (1991); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992).

The Jones argue that even if venue clauses that turn on remedy are enforceable, this particular contract is not susceptible to such an interpretation. They assert that if all presale disputes "relate to" the Deposit, then there would be no circumstance under which Section 4(b) would apply, rendering that provision a "nullity."[5] We agree that a liquidated damages clause restricting the available remedy, standing alone, would not necessarily control our interpretation of

---

[5] The Jones also claim that Section 3 of the First Addendum implicitly negated Section 13.1's liquidated damages provision. Our reading of the contract does not reveal anything contradictory in these two provisions. Moreover, Section 15 of the First Addendum removed specific portions of Section 13.1 but did not strike the language regarding liquidated damages. Had the parties intended to rescind the damages provision in Section 13.1, they likely would have done so explicitly.

Section 4.[6]  But in this case, the questions of remedy and venue are intertwined, as the parties clearly intended to limit the available remedies depending on the nature of the dispute and also intended to assign venue based upon the nature of the dispute.  "[C]onstruing all provisions together and in harmony with each other," Town Ctr. Shopping Ctr., 148 P.3d at 572, we conclude that the parties intended to limit the scope of particular disputes, such that the only question between them was the disposition of the Deposit.  Because the Jones' particular claims fall within this set of disputes, Section 4(a) applies, and venue is therefore proper in San Diego County, California.

## III

For the foregoing reasons, we **AFFIRM** the dismissal for improper venue.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

---

[6] KP&H's argument that all presale disputes would be litigated in San Diego County is inconsistent with Section 13.2, which does not limit KP&H's remedies for a presale termination by the Jones.

No. 07-3246, Jones v. KP&H, LLC, et al.

**BRISCOE**, Circuit Judge, dissenting:

I respectfully dissent.  In my view, the choice of venue clause contained in the parties' Definitive Purchase Agreement (DPA) clearly requires the Jones' breach-of-contract claim to be "tried and litigated" in "Barber County, Kansas." Therefore, I would reverse the judgment of the district court and remand the case with directions to grant the Jones' motion to remand the proceedings to the Kansas state court in which they were originally filed.

I.

Central to this appeal is the proper interpretation of the choice of venue clause set forth in Section 4 of the Second Addendum to the Purchase Agreement and Joint Escrow Instructions.  That clause states:

> 4. <u>Jurisdiction and Venue for Dispute Resolution</u>.  Notwithstanding anything to the contrary set forth in the revised Draft Purchase Agreement or the Escrow Agreement (including any hand marked or initialed deletions or additions to the Escrow Agreement), (a) any dispute arising out of or relating to Buyer's Deposit or Earnest Money Deposit, or the release, failure to release, refund, return or collection of the same to or by Buyer, shall be tried and litigated exclusively in the State and Federal Courts located in San Diego County, California, and the parties hereby irrevocably consent to the sole and exclusive jurisdiction thereof solely for such purpose, and (b) any dispute arising out of or relating to the purchase and sale of the Property shall be tried and litigated exclusively in the State and Federal Courts located in Barber County, Kansas, and the parties hereby irrevocably consent to the sole and exclusive jurisdiction thereof solely for such purpose.

Aplee. App. at 28.

There is no dispute that this choice of venue clause was intended to encompass any and all disputes arising between the parties. Thus, the Jones' breach-of-contract claim necessarily has to fall within the scope of either subsection (a) or (b) of the choice of venue clause. In other words, as the majority notes, "[t]he essential question is whether the Jones' breach-of-contract claim is best characterized as 'arising out of or relating to' the proper disposition of the Deposit or the sale of the property." O&J at 8.

The majority resolves this question in a roundabout fashion. First, the majority concludes, citing various provisions of the DPA and the Escrow Deposit Agreement, "that the parties intended to limit the scope of disputes arising out of KP&H's presale termination." O&J at 11. More specifically, the majority asserts that "[s]o long as KP&H terminated the contract prior to sale, the only matter to be resolved between the parties was the proper transfer of the Deposit." O&J at 11. In turn, the majority concludes that because "the dispute at issue here . . . arose out of a presale termination by KP&H," "Section 4(a) governs" and "venue is [thus] proper in San Diego County." Id.

The key flaw in this analysis lies in the assumption that, in the event of a so-called "presale termination" by KP&H, "the only matter to be resolved between the parties was the proper transfer of the Deposit." To be sure, the provisions of the DPA cited by the majority make clear that the parties intended (a) for the Deposit to be returned to KP&H "immediately and without dispute" in

-2-

the event that it properly terminated, and (b) for the Deposit to serve as a measure of liquidated damages in the event that KP&H improperly terminated. Importantly, however, in order to decide how the Deposit should be disposed of in the event of a termination by KP&H, it must necessarily be determined whether such termination was "proper" or "improper," i.e., whether it was consistent with, or in violation of, the terms of the DPA. Indeed, that very question lies at the heart of this case -- the Jones assert that KP&H terminated in violation of the DPA, while KP&H asserts that its termination was consistent with the terms of the DPA – and will have to be determined at some point, by some court. Thus, it is simply not true that "the only matter to be resolved between the parties" in the event of a presale termination by KP&H is "the proper transfer of the Deposit."

Returning to the plain language of the choice of venue clause, it is obvious that the Jones' breach-of-contract claim fits much more readily within the scope of subsection (b) than subsection (a). The Jones' breach-of-contract claim clearly does not "arise out of" the Deposit, and only tangentially, at best, "relates to" the Deposit (in the sense that the Deposit will serve as liquidated damages in the event that the Jones prevail, or will be remain with KP&H in the event that defendants prevail). Without question, however, the breach-of-contract claim "arises out of" or "relates to" the "purchase and sale of" the Jones' property. It is undisputed that the parties entered into a written agreement regarding the purchase and sale of the Jones' property. Had KP&H completed the purchase

-3-

process, rather than terminating the agreement, the Jones would have suffered no loss and would have had no claim. Thus, their breach-of-contract claim clearly "arises out of" the purchase and sale of the property. Cf. Georgacarakos v. United States, 420 F.3d 1185, 1186-87 (10th Cir. 2005) (construing similar "arising out of" language in federal statute); Foos v. Terminix, 67 P.3d 173, 176 (Kan. Ct. App. 203) (construing similar "arising out of" language in Kansas Workers Compensation Act). For the same reasons, the Jones' breach-of-contract claim obviously "relates to" the purchase and sale of the property. Consequently, the breach-of-contract claim squarely falls within the scope of, and must be governed by, subsection (b) of the choice of venue clause.

Although defendants argue that subsection (b) of the choice of venue clause applies only in the event of a completed purchase/sale, they are mistaken. The terms "purchase" and "sale" are employed as nouns in subsection (b) and, given their plain and ordinary meaning, encompass the entire act of purchasing/selling. See Anderson v. Dillard's Inc., 153 P.3d 550, 554 (Kan. 2007); Schartz v. Kansas Health Ins. Ass'n, 66 P.3d 866, 869 (Kan. 2003). More specifically, the term "purchase," when used as a noun, refers to "[t]he action or an act of purchasing something." Oxford English Dictionary (Draft Revision Mar. 2008). Similarly, the term "sale," when used as a noun, refers to "[t]he action or an act of selling or making over to another for a price . . . ." Oxford English Dictionary (2d ed. 1989). Rather than focusing on a completed transaction, both terms encompass

-4-

all of the actions inherent in or necessary to purchasing or selling something. Thus, subsection (b) of the choice of venue clause does not, as suggested by defendants, apply only in the event of a completed purchase/sale.[1]

Consistent with the notion that subsection (b) of the choice of venue clause was intended to encompass a broad range of disputes "arising out of" or "relating to" the purchase/sale of the property, it is readily apparent that subsection (a) was intended to more narrowly encompass claims directly relating to the Earnest Money Deposit. Not only does the plain and unambiguous language of subsection (a) lead to this conclusion, a review of the Escrow Deposit Agreement confirms this construction. Paragraph 10 of the Escrow Deposit Agreement provides that "[a]ny dispute arising out of or relating to this Agreement [i.e., the Escrow Deposit Agreement] . . . shall be tried and litigated exclusively in the State and Federal Courts located in San Diego County, California . . . ." Id. at 33. This language, which was obviously intended to be consistent with the DPA's choice of venue clause, confirms that only disputes relating directly to the Earnest Money Deposit were to be brought in San Diego County.

In sum, because the Jones' breach of contract claim clearly falls within the scope of subsection (b) rather than subsection (a) of the choice of venue clause,

---

[1] Defendants' proposed interpretation of the choice of venue clause would place nearly every contractual dispute within the scope of subsection (a), and would therefore render subsection (b), despite its plain language, all but meaningless.

the district court should have denied defendants' Rule 12(b)(3) motion to dismiss and granted plaintiffs' motion to remand the case to Barber County, Kansas, where it was originally filed.