No. 87,080

LINDSAY CANNON, *Appellee,* v. FARMERS INSURANCE COMPANY, INC., *Appellant.*

(50 P.3d 48)

Opinion filed July 12, 2002.

*Jeffrey S. Southard*, of Law Offices of Kenneth J. Berra, of Kansas City, Missouri, argued the cause and was on the brief for appellant.

*David R. Smith*, of Sanders, Simpson, Fletcher & Smith, L.C., of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J. Lindsay Cannon and her passenger Adam Hipp were injured in a one-car accident allegedly caused by the negligent driver of a phantom vehicle. Farmers Insurance Company, Inc. (Farmers) settled with Hipp on his liability claim against Cannon. However, Farmers denied Cannon's uninsured motorist claim based on a policy exclusion preventing Hipp, as one having a claim from the same accident, from verifying the facts of the accident. The trial court held that Hipp's liability claim did not disqualify him as a witness under statutory mandated uninsured motorist coverage. K.S.A. 40-284 *et seq*. We affirm.

Cannon sustained severe injuries early one December morning on her way to school when a dark sports utility vehicle stopped immediately in front of her vehicle, causing her to swerve, slip on ice, veer off the road, and crash into a utility pole. She and Hipp, who was also injured in the accident, were the sole occupants of Cannon's vehicle. There was no contact with the phantom vehicle. Hipp verified that the phantom vehicle caused the accident.

On behalf of Cannon, Farmers settled Hipp's claim for injuries against Cannon. Farmers refused to cover Cannon's uninsured motorist claim based upon a policy exclusion requiring verification of the facts of the accident from one not making a claim from the

same accident. Cannon prevailed in the trial court, and Farmers appeals from summary judgment granted Cannon on her uninsured motorist claim.

The phantom vehicle is an uninsured vehicle under Farmers' policy which defines an uninsured motor vehicle in part as "[a] hit-and-run vehicle whose operator or owner has not been identified and which causes bodily injury with or without physical contact."

Farmers argued before the trial court that Hipp was not a witness who qualified to verify the facts of the accident under the policy exclusion because he had made a claim from the same accident against Cannon for his injuries. Farmers makes a similar argument on appeal under its policy and under K.S.A. 40-284(e)(3). Cannon claims that the trial court was correct that Hipp is qualified because his claim was not an uninsured motorist claim, but rather a liability claim against Cannon. Farmers and Cannon agreed that if coverage was found to exist, Cannon would be entitled to uninsured motorist policy limits in the amount of $100,000. We have jurisdiction by reason of our transfer of this case under K.S.A. 20-3018(c).

The questions raised by this appeal involve the interpretation of the contractual exclusion provisions of Farmers' policy, as well as the interpretation of Kansas statutory law relating to the permissible exclusions of mandatory uninsured motorist coverage, specifically K.S.A. 40-284(e)(3). Both are questions of law for which this court's review is unlimited. *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, 124, 992 P.2d 800 (1999); *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

*Uninsured Motorist Coverage*

Uninsured motorist coverage became mandatory when K.S.A. 40-284 was adopted in 1968. L. 1968, ch. 273, sec. 1. Following a 1981 amendment, if the other motorist had liability insurance but the limits of liability were less than the insured's damages and less than the insured's uninsured motorist converge, the insured could recover the excess damages from his or her own insurer up to policy limits. L. 1981, ch. 191, sec. 1; Jerry, *New Developments in Kansas Insurance Law*, 37 Kan. L. Rev. 841, 878 (1989); Jerry, *Recent*

*Developments in Kansas Insurance Law: A Survey, Some Analysis, and Some Suggestions*, 32 Kan. L. Rev. 287, 343-44 (1984).

The purpose of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation mandated by the State of Kansas. *Degollado v. Gallegos*, 260 Kan. 169, 172-73, 917 P.2d 823 (1996). Thus, the statutory mandate is remedial in nature and is to be liberally construed to provide broad coverage:

"The uninsured and underinsured motorist statutes are remedial in nature. They should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident and arise out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured or underinsured motorist." *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 215, 824 P.2d 955 (1992).

See *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988).

Any attempts not authorized by statute to condition, limit, or dilute the broad, unqualified mandated uninsured motorist coverage are void and unenforceable. *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 730, 811 P.2d 1112 (1991). Where an uninsured motorist coverage insurance policy is overbroad and thus unenforceable, the statutory exclusions provided for by K.S.A. 40-284(e) are applied in place of the unenforceable provisions. *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 741, 829 P.2d 897 (1992).

*Simpson v. Farmers Ins. Co.*, 225 Kan. 508, 592 P.2d 445 (1979), provides an early example of a policy provision excluding uninsured motorist coverage contrary to law. The policy in *Simpson* excluded coverage when there was no physical contact between the insured and the uninsured phantom vehicle. This court held that the "physical contact" requirement in the "hit and run" provisions of the automobile liability policy was in derogation of the uninsured motorist statute and was, therefore, void as against public policy. 225 Kan at 515. In 1981, the legislature, primarily in response to *Simpson*, amended the law to permit, among other exclusions, the one we consider in this case regarding the phantom hit-and-run vehicle. See Scott, *Uninsured/Underinsured Motorist Insurance: A Sleeping*

*Giant,* 63 J. K. B. A. 28, 31 (May 1994). The provision relating to the phantom vehicle is designed to protect against fraudulent claims in one-car accidents when there is no independent proof of the existence of the phantom driver. See Jerry, 32 Kan. L. Rev. at 343-44.

The 1981 amendment is set forth in K.S.A. 40-284(e)(3) and provides that uninsured motorist coverage may exclude coverage under the following circumstance:

> "(3) when there is no evidence of physical contact with the uninsured motor vehicle and when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making claim under the policy."

Farmers' policy is somewhat similar to the statutory exclusion in providing coverage under the following circumstances:

> "If there is no physical contact, the facts of the accident must be verified by someone other than you or another person having a claim from the same accident."

Farmers denied coverage based upon the above exclusion. While the above statutory exclusion and Farmers' policy exclusion are similar in nature, Farmers' exclusion appears to exclude more than the statute allows. The trial court in its summary judgment reached this conclusion and replaced Farmers' exclusion with the language of the statutory exclusion.

### Farmers Policy Exclusion

Farmers' exclusion is set forth in that part of the policy dealing exclusively with uninsured motorist coverage as follows:

> "PART II-UNINSURED MOTORIST
> Coverage C-Uninsured Motorist Coverage
> (Including Underinsured Motorists Protection)
> . . . .
> 3. Uninsured motor vehicle means a motor vehicle which is:
> . . . .
> b. A hit-and-run vehicle whose operator or owner has not been identified and which causes bodily injury with or without physical contact to:
> (1) You or any family member.
> . . . .

If there is no physical contact, the facts of the accident must be verified by someone other than you or another person having a claim from the same accident."

*Trial Court Decision*

Based upon the undisputed facts, the trial court concluded that Farmers' exclusion was overbroad and applied the statutory exclusion in analyzing the question of coverage. Based on the statute, the trial court determined that Hipp was a witness who could provide corroborating evidence concerning the facts of the accident. It found that (1) Hipp settled his claim against the bodily injury provisions of the policy and that this claim was against Cannon, the driver of the vehicle; and (2) the statutory exclusion providing for a claim *under the policy* applies only where the witness actually makes a claim under the uninsured motorist coverage of the policy. The court concluded that its interpretation was consistent with the purpose of the exclusion to protect against fraud and that it gave broader effect to uninsured motorist coverage required by law.

Farmers argues in this appeal that the trial court did not find the policy or the statute ambiguous. However, our standard of review is unlimited. "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). We, therefore, examine Farmers' policy provision to determine whether there is ambiguity and whether Farmers' exclusion is overbroad compared to the authorized statutory exclusion set forth in K.S.A. 40-284(e)(3).

*Policy Ambiguity*

Cannon claims that the policy language incorporating the exclusion is ambiguous in several respects. An insurance policy is ambiguous if there is genuine uncertainty as to which of two or more possible meanings is proper. *Steinle v. Knowles*, 265 Kan. 545, 549, 961 P.2d 1228 (1998); *Spivey v. Safeco In. Co.*, 254 Kan. 237, 240, 865 P.2d 182 (1993). "To be ambiguous, 'a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its lan-

guage.' " *Steinle*, 265 Kan. at 551. " 'Where terms are ambiguous, the policy shall be construed to mean what a reasonable person in the position of the insured would have understood them to mean.' " 265 Kan. at 549. "The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Union State Bank v. St. Paul Fire and Marine Ins. Co.*, 18 Kan. App. 2d 466, 470-71, 856 P.2d 174 (1993).

The insured argues that the exclusionary language in the policy is ambiguous because the word "having" makes no distinction between being able to make a claim, actually being in the process of making a claim, or previously having made a claim. Cannon suggests the most reasonable interpretation of the policy exclusion would require her to present a witness other than one who has a pending uninsured motorist claim. Because Hipp's liability claim was settled before Cannon filed her uninsured motorist action against Farmers, Cannon contends, he did not have a pending claim. In this sense, while Hipp "had a claim," he is not someone "having a claim." Cannon argues that the suffix "-ing" forms the present participle of the verb "have." Webster's Third New International Dictionary 1039 (1993). Hence, according to Cannon's argument, the present tense of the verb-form "have" was chosen by Farmers and necessarily excludes Hipp because he no longer had a pending claim.

Farmers takes the position that the policy language excludes a witness who ever had a claim arising out of the same accident. Farmers interprets its own policy as saying "having or ever had a claim." Thus, the fact that Hipp's claim was settled prior to Cannon's action does not make Hipp qualified to corroborate the facts of the accident.

Cannon further argues the word "claim" is ambiguous as that word is used in the policy. She argues that "claim" must mean an uninsured motorist claim. As noted above, the exclusion appears in Part II of the policy, which deals exclusively with uninsured motorist coverage. Farmers interprets the word "claim" to mean any claim arising from this same accident. Thus, Farmers asserts

that Hipp's liability claim against Cannon is included in the definition of "claim."

We agree that ambiguity exists both in the use of the words "having a claim" and in the use of the word "claim." "Having" is susceptible to the following interpretations: (1) A person with a pending claim is someone "having a claim"; (2) a person who is capable of making a claim, even if he or she chooses not to, may be someone "having a claim"; and (3) a person who at one time made a claim, but resolved the claim, may still be someone "having a claim." Moreover, by its use of the word "claim," the policy language is susceptible to varying interpretations. It could refer to uninsured claims only based upon its location in Part II of the policy. Further, the statutory language exclusively concerns uninsured motorist coverage, which strengthens Cannon's interpretation that "claim" refers only to uninsured motorist claims. However, as we discuss below, the policy excludes more than is permitted by statute.

If we limit our consideration to the policy exclusion, the exclusionary language used by Farmers is ambiguous. Under such circumstances, we interpret the policy exclusion against Farmers and in favor of the insured, Cannon. See *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 23, 804 P.2d 1374 (1991). Since Hipp's claim was not an uninsured motorist claim under the policy but, rather, a claim against Cannon, he would be qualified as a witness to verify the facts regarding the phantom vehicle. In addition, the phrase "having a claim" would refer to someone presently having a claim, which would exclude Hipp because, although he had a claim, Hipp's claim against Cannon had been settled by Farmers. Thus, under the interpretations most favorable to the insured, summary judgment for Cannon was correctly entered by the district court.

## Comparison of Policy and Statutory Exclusions

Cannon argues that the policy exclusion is broader than is permitted by the statutory exclusion and is, therefore, void. Citing familiar law, Cannon points out that when a contractual exclusion is broader in scope than its authorizing statute, the policy provisions are void and unenforceable. *Degollado v. Gallegos*, 260 Kan. at 171.

Uninsured motorist coverage is mandated under Kansas law and any attempt to condition, limit, or dilute uninsured motorist coverage beyond the exclusions and limitations expressly allowed by statute are contrary to public policy and void. *Ball v. Midwestern Ins. Co.*, 250 Kan. at 740-41. The question remains whether Farmers' policy provisions are broader than those provided by K.S.A. 40-284(e)(3) and, if so, what is their effect in this case.

K.S.A. 40-284(e)(3) allows exclusion of uninsured motorist coverage when: (a) there is no evidence of physical contact with the uninsured motor vehicle and (b) there is no reliable competent evidence to prove the facts of the accident from a disinterested witness *not making claim under the policy*. Farmers' policy exclusion reaches beyond the statute by preventing any person *having a claim from the same accident* from verifying the facts of the accident.

The district court based its decision upon K.S.A. 40-284(e)(3), thereby implicitly concluding that Farmers' policy exclusion was broader than allowed by the statute:

"The facts admitted show that Mr. Hipp settled a claim against the bodily injury provisions of the policy, that is, a claim against the driver of the vehicle. The issue here is whether such a claim is 'under the policy' as that term appears in K.S.A. 40-284(e)(3). K.S.A. 40-284 is a statute dealing with uninsured motorist coverage and subparagraph (e) contains authorized exclusions from such required coverage.

"The court reads the provisions of K.S.A. 40-284(e)(3) to allow exclusion only where the witness actually makes a claim under the uninsured motorist coverage of the policy. The court finds that this interpretation is more consistent with the purpose of the exclusion to protect against fraud. This interpretation further gives broader effect to uninsured motorist coverage required by law. Therefore, defendant's motion for summary judgment should be denied."

Farmers' policy requires verification by someone other than the insured or another person having a claim from the same accident. The statute authorizes exclusion "when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making a claim under the policy." K.S.A. 40-284(e)(3). Notwithstanding the ambiguity of the phrase in the policy "having a claim from the same accident," it is apparent that this language is broader than "making claim under the policy." For example, Hipp may be automatically excluded under policy pro-

visions from offering evidence of the accident based upon his claim against Cannon. His claim was against Cannon for injuries he sustained based upon her alleged negligence. This claim was a third-party claim not under or against the policy but rather against Cannon. Farmers paid Hipp its policy limits under the liability portion of the policy by way of indemnifying Cannon. However, Hipp would not necessarily be excluded as a witness under the statute because he was not, at the time Cannon filed suit, making a claim against Farmers; rather, his claim was against Cannon.

In comparing the policy language to the statutory language, we question the meaning of the statutory phrase "under the policy." The policy language excludes persons having a claim from the same accident. The meaning of "under the policy" in the statute is important if that language is to be applied in place of the policy language. The trial court concluded "under the policy" refers to an uninsured motorist claim. We agree with the trial court.

Hipp's claim is commonly referred to as a third-party claim, that is, a claim against another person as opposed to a first-party claim, which is a claim directly against the insurance company. In this case, Hipp's claim is one sounding in tort against Cannon based on her own negligence in the operation of her vehicle. Hipp seeks to obtain judgment against Cannon for his injuries. She purchased a policy of insurance which indemnifies her in the event such a judgment is obtained against her by Hipp. In that event, Farmers pays the claim. In the present case, Farmers settled with Hipp, paying him the policy limits of $100,000. On the other hand, Cannon's claim is a first-party claim, that is, one directly against Farmers. In her action, Farmers becomes the defendant. Cannon's action is one sounding in contract seeking to enforce the contractual provisions in the policy between herself and Farmers.

The difference in the separate actions discussed above serve to enlighten us on the meaning of the statutory phrase "under the policy." Hipp's action is against Cannon. Cannon's action is against Farmers, based upon the policy. As such, Cannon's action is one "under the policy" while Hipp's action only relies on the policy for indemnification of Cannon's liability to him. Moreover, the exclusion we deal with appears in K.S.A. 40-284, which exclusively con-

cerns uninsured motorist coverage. The same holds true in Farmers' policy. Part II as quoted above deals exclusively with uninsured motorist coverage. Thus, based upon the meaning of the phrase "under the policy" and the location of that phrase in the statute, and based on the location of the word "claim" in Part II of the policy, it is clear that the statute, as well as the policy, refers to first-party uninsured motorist claims and not third-party claims. Hipp is, therefore, not precluded from serving as a witness for Cannon under the exclusion because he made a third-party claim.

*Disinterested*

K.S.A. 40-284(e)(3) authorizes exclusion of uninsured motorist coverage where there is no reliable competent evidence to prove the facts of the accident from a disinterested witness. The statute does not define "disinterested," and there are no Kansas cases defining the term as it is used in the statute. This case presents a question of first impression for this court.

The purpose of the statutory exclusion where there is no physical contact between the insured's vehicle and the phantom vehicle is the prevention of fraudulent claims. *Clements*, 243 Kan. at 127. In a one-vehicle accident with no witnesses, an insurance carrier has no way to refute the insured's statement that he or she swerved to avoid an on-coming vehicle. Thus, in 1981 the Kansas Legislature amended the mandatory uninsured motorist coverage provision and authorized insurance carriers to require, from the insured, a disinterested witness.

As we have stated, the mandated coverage is intended to provide recompense to innocent persons injured through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot compensate innocent persons for the damages. We recognize the remedial nature of this coverage and liberally construe the legislation to provide the intended protection. *Ball v. Midwestern Ins. Co.*, 250 Kan. at 738-41. We also recognize that fraud prevention is a legitimate and important consideration. *Clements*, 243 Kan. at 127. Other states have attempted to limit or exclude recovery in cases involving phantom vehicles. While authority from other jurisdictions provides some help, the

cases in different states vary widely based on individual states' statutory language.

The issue is whether Hipp is a disinterested witness who may corroborate Cannon's version of the facts of this accident. As indicated above, the trial court found Hipp could provide evidence of the facts of the accident based upon its determination that Hipp was not making an uninsured motorist claim under the policy and was, therefore, qualified. There was no discussion of the meaning of the term "disinterested" in the trial court's decision. We are advised in the interpretation of a statute to give words their accepted and usual meaning in the absence of an expressed contrary legislative intention. See *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 686, 847 P.2d 1292 (1993) (holding subsections of K.S.A. 40-284[e] should be interpreted consistently and harmoniously).

"Disinterested" is defined as "not influenced by regard to personal advantage," "free from selfish motive," and "not biased or prejudiced." Webster's Third New International Dictionary 650 (3d ed. 1993). Black's Law Dictionary defines "disinterested" as "[f]ree from bias, prejudice, or partiality; not having a pecuniary interest." Black's Law Dictionary 481 (7th ed. 1999). Black's defines the phrase "disinterested witness" as "[a] witness who is legally competent to testify and has no private interest in the matter at issue." Black's Law Dictionary 1596. The Iowa Supreme Court, in a different context, defined "disinterested witness" as "[o]ne who has no right, claim, title, or legal share in the cause or matter in issue." *Post-Newsweek Cable v. Bd. of Review*, 497 N.W.2d 810, 813 (Iowa 1993).

Other jurisdictions interpreting their own statutes regarding the exclusion we now consider have defined "disinterestedness" within the context of specific facts. See generally, Annot., *Uninsured Motorist Indorsement: Construction and Application of Requirement That There Be "Physical Contact" with Unidentified or Hit-and-Run Vehicle; "Miss-and-Run Cases,"* 77 A.L.R.5th 319, § 5[c] and § 6 [d]; Annot., *Uninsured Motorist Indorsement: General Issues Regarding Requirement That There Be "Physical Contact" with Unidentified or Hit-and-Run Vehicle,* 78 A.L.R.5th 341.

Consistent with the avowed purpose of preventing fraud, the definitions of disinterested, and case law, we perceive two distinct aspects involved in the determination of whether a witness is disinterested. The first pertains to the relationship of the parties and the second pertains to the lack of a pecuniary interest in the outcome of the case. As noted by most cases on this subject, the determination is fact intensive and in most instances will be made on a case-by-case basis. However, there are those cases where the answer is self evident, as it would be, for example, if Hipp were making, along with Cannon, an uninsured motorist claim against Farmers. However, since his claim is a liability claim against Cannon, the answer becomes more difficult and depends upon the relationship between Hipp and Cannon and upon Hipp's pecuniary interest in the outcome of Cannon's claim against Farmers.

The record in this case contains no evidence regarding the relationship between Hipp and Cannon. Farmers settled Hipp's liability claim against Cannon without any evidence of their relationship. We know that Hipp was a passenger and Cannon was driving early one December morning to school. Beyond this, we have no additional information about their relationship. Based upon the record, we conclude that the relationship is one of driver-passenger, a relationship that would not prevent Hipp from being disinterested and from providing evidence as to the facts of the accident.

We also note that Hipp's initial response was that the dark sports utility vehicle stopped abruptly in front of Cannon's vehicle, causing her to lose control of her vehicle. Hipp's initial response and his stance throughout Cannon's action did not change. While not determinative, his initial response as well as his consistency throughout militates against a finding of fraud.

The second inquiry involves Hipp's pecuniary interest in the outcome of the case. Certainly, Hipp had a pecuniary interest in the outcome of his own claim, but his interest was not necessarily aligned with Cannon's. Hipp's third-party claim is against Cannon, with indemnification of Cannon by Farmers. In a comparative fault jurisdiction such as Kansas, see K.S.A. 60-258a, Hipp and Cannon have divergent interests based upon the claims asserted. Hipp's

interest would be to establish that Cannon was solely responsible for the accident. To the extent Farmers' representation of Cannon could establish that the phantom vehicle was the cause of the accident, Hipp's recovery against Cannon would be diminished by the percentage of fault attributed to the driver of the phantom vehicle. Cannon's interest in her uninsured motorist claim against Farmers would be enhanced by the percentage of fault she was able to posit against the phantom vehicle, the uninsured vehicle defined as such under Farmers' policy. We conclude that Hipp's pecuniary interest is opposite of Cannon's. Thus, Hipp's interest would not prevent him from providing facts of the accident under K.S.A. 40-284(e)(3).

Finally, most jurisdictions dealing with this question conclude that the time for making a determination regarding a witness' qualifications under statutory exclusions, including his or her disinterested status, is at the time such witness' testimony is given. The Supreme Court of Oregon is representative of this conclusion:

"In the absence of an express temporal qualification in the text of ORS 742.504(2)(g)(B) itself, we believe that the corroboration requirement set out in that subparagraph should be read consistently with the companion requirements set out in subparagraphs (A) and (C). Accordingly, we conclude that, based on text and context, the operative phrase in ORS 742.504(2)(g)(B)—'any person having an uninsured motorist claim resulting from the accident'—is most reasonably read as referring to a person who has such a claim at the time that the determination of uninsured motorist coverage is being made—i.e., the time when the person's testimony is offered to corroborate the facts of the 'phantom vehicle' accident—rather than to a person who has such a claim at the time of the accident." To v. State Farm Mutual Ins., 319 Or. 93, 101, 873 P.2d 1072 (1994).

Farmers settled with Hipp on his claim against Cannon. At the time of Cannon's action against Farmers, and under the provisions of K.S.A. 40-284(e)(3), Hipp is "not making a claim under the policy," for his claim had been settled by Farmers. Hipp, at that time, had absolutely no pecuniary interest in the outcome of the

case. We conclude that the trial court properly entered summary judgment in favor of Cannon.

Affirmed.

ABBOTT, J., not participating.
DAVID S. KNUDSON, J., assigned. ▮