NOT DESIGNATED FOR PUBLICATION

No. 125,349

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J.C., a Minor Child, by and through
Next Friend, K.C., the Natural Mother,
*Appellant*,

v.

YOUNG MEN'S CHRISTIAN ASSOCIATION OF SOUTHWEST KANSAS, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Finney District Court; RICKLIN PIERCE and MICHAEL WARD, judges. Submitted without oral argument. Opinion filed June 7, 2024. Affirmed in part, reversed in part, and remanded with directions.

*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez Law Office, L.L.C., of Kansas City, appellant.

*Danielle M. Uzelac*, *John G. Schultz*, and *Derek G. Johannsen*, of Franke Schultz & Mullen, P.C., of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

LAHEY, J.:  This is a negligence case brought by K.C. (Mother) on behalf of her minor son, J.C., to recover damages for injuries he suffered while playing in an inflatable bouncy house at a Young Men's Christian Association of Southwest Kansas (YMCA) family fun day. The jury returned a verdict in favor of J.C. assessing fault against the YMCA, Mother, and a nonparty, Lee Whittington d/b/a Skywalker Gymnastics (Whittington). Mother asserts that the district court erred by including Whittington and Mother on the verdict form for purposes of comparative fault; by not admitting the

1

bouncy house owner's manual into evidence; and by prohibiting Mother from seeking emotional-distress damages. After carefully reviewing the record and the parties' arguments, we conclude the trial court erred in only one respect—by allowing the jury to assign fault to Mother. Because the error is not harmless, we must reverse the jury's determination on fault. Since there was no appeal concerning the jury's calculation of damages, we remand the case only on the issue of liability so that fault may be properly apportioned between the YMCA and Whittington.

FACTUAL AND PROCEDURAL HISTORY

On Saturday, November 12, 2016, four-year-old J.C. and Mother attended a YMCA family fun day at the West Pavilion of the Finney County Fairgrounds in Garden City. The event offered various activities including facepainting, an obstacle course, and three bouncy houses. After playing on a trampoline and a balance beam, J.C. quickly ran to a bouncy house and got in.

While J.C. was jumping in the bouncy house, Mother recorded videos on her cell phone of him playing. At some point, Mother testified she walked "a few steps" to get in line at the concession stand to get J.C. and herself something to eat and drink. From there, she zoomed in and took a picture of J.C. and then turned around to place her order. While waiting for her order, things got quiet, and she knew something had happened.

Mother turned back around and saw J.C. walking from the back end of the bouncy house and holding his arm. She "scooped him up," and a woman from the sheriff's office offered to drive them to the hospital. Once there J.C. was examined, and Mother was told that he needed to be air-lifted to a hospital in Wichita for treatment. After arriving in Wichita, Dr. Bradley Dart diagnosed J.C. with a displaced supracondylar humerus fracture of the right elbow—a level 3 fracture. J.C. underwent surgery for this injury.

2

Additional facts relevant to the issues on appeal are set forth in the analysis section of this opinion.

On behalf of her son, Mother sued the YMCA and Whittington for negligently operating the bouncy house at the family fun event where J.C. was injured. There were no eyewitnesses to the actual incident, but the petition stated that the YMCA and Whittington's negligent operation of the bouncy house caused J.C. to be thrown from it onto a concrete floor and sustain severe and permanent injuries. Those injuries included "a multiple fractured broken right elbow . . ., a severe shock to the nervous system, and considerable mental and physical pain and suffering" for which the parents incurred expenses. Mother also sought an award for her own emotional distress.

The YMCA filed a summary judgment motion, arguing it owed no duty to J.C., contending that Whittington had exclusive control over the bouncy house based on a rental contract. Thus, while admitting it owned the bouncy house and set it up, the YMCA argued it never controlled, operated, or possessed it on the day of the incident— rather, Whittington did. The YMCA also contended that Whittington rented the bouncy house from it and opted against paying an additional $50 per hour to have YMCA employees supervise the bouncy house on the day of the accident. Mother disputed the existence of a rental contract and challenged whether Whittington or Skywalker Gymnastics was involved or even existed separately from the YMCA. The district court denied the summary judgment motion, leaving all issues to be resolved at jury trial.

Thereafter, Mother voluntarily removed Whittington as a defendant in an amended petition, believing that Whittington was not a separate entity from the YMCA and was not doing business as Skywalker Gymnastics. Before trial, the district court granted the YMCA's motion in limine to exclude Mother's claim for emotional distress damages because she claimed no physical injuries resulting from observing her son's injuries.

Up to this point, Judge Ricklin Pierce presided over the case. But on June 29, 2021, the Kansas Supreme Court assigned Senior Judge Mike Ward to take it over.

After a three-day trial in May 2022, the jury returned a verdict for J.C., awarding $7,600 total damages—$7,500 in medical expenses and $100 in noneconomic losses. Although Whittington was no longer a party to the lawsuit, he was included on the verdict form so that the jury could assess his potential fault. The jury attributed 15% fault to the YMCA, 60% fault to Whittington, and 25% fault to Mother. The district court entered judgment for J.C. and against the YMCA in the amount of $1,140. Mother, on behalf of J.C., appeals.

ANALYSIS

J.C. challenges the inclusion of Whittington and Mother as parties for comparative fault purposes on the verdict form. The Kansas Supreme Court has set forth a three-step process for appellate review of jury instruction issues:

> "'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Although a verdict form is different from a jury instruction, challenges to a verdict form—like J.C. raises here—are reviewed using the same three steps. *State v. Hayes*, 57 Kan. App. 2d 895, 909-10, 462 P.3d 1195 (2020) (citing *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 [2009]). The discussion turns to those steps now.

4

*The objections to comparing fault of Whittington and Mother were preserved for appeal.*

Our discussion starts with the first inquiry—whether the issue has been preserved.

The district court engaged in two on-the-record discussions regarding jury instructions. The first conference occurred at the end of the second day of trial. Counsel for J.C. told the court that he did not agree that this was a comparative fault case and gave reasons why neither Mother nor Whittington could be assigned fault, concluding, "[s]o I think there is nobody else except [the] YMCA. So that's my objection [to comparative fault]."

A second conference was held the following morning before closing arguments after the court prepared its proposed set of instructions. When reviewing the instructions with counsel, the court expressly recognized J.C.'s "preserved" objection to the comparison of fault on the part of Mother, but no comment or specific objection was made to the inclusion of Whittington in either the comparative fault instruction or the verdict form. When the verdict form was specifically discussed, counsel for J.C. simply recommended that Whittington be listed before Mother. While the record is certainly clearer regarding J.C.'s objection to the inclusion of Mother for purposes of comparison of fault, we think the record from the initial conference adequately reflects J.C.'s objection to Whittington as well. We thus find that this issue is properly before us.

Next, we examine whether the verdict form was legally and factually appropriate considering the entire record. *State v. Thomas*, 302 Kan. 440, 445, 353 P.3d 1134 (2015) (analyzing jury instructions and verdict form for error under this test). Appellate courts have unlimited review over these questions. 302 Kan. at 445.

A verdict form is legally appropriate if it "'fairly and accurately state[s] the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016) (quoting *State*

5

*v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 [2012]), *cert. denied* 580 U.S. 1220 (2017). And it is factually appropriate if "there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, to support a factual basis for the . . . verdict form." *State v. Davis*, No. 115,566, 2017 WL 3324693, at *2 (Kan. App. 2017) (unpublished opinion) (citing *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 [2012]), *rev. denied* 307 Kan. 989 (2018).

*Including Whittington on the verdict form was not erroneous.*

J.C.'s contention at trial, and on appeal, is that Whittington d/b/a Skywalker Gymnastics should not have been included on the verdict form because Whittington was not a separate entity from the YMCA. Whittington did not testify in the case, and his signature does not appear on any document. J.C. argues that "Lee Whittington was a ruse, not an actual party to the case," and "Skywalker Gymnastics was a strawman scapegoat created by the YMCA to escape liability and was not a separate party in the case." J.C. also argued to the jury that a licensing contract between the YMCA and the Finney County Fairgrounds made the YMCA "responsible for . . . any injuries taking place on the property." And he pointed out that there was no rental agreement for the bouncy house that was signed or initialed by Whittington.

J.C.'s explanation of why the district court erred by allowing Whittington to be on the verdict form is not entirely clear as he does not use the three-step analysis this court follows to review verdict form issues outlined in *McLinn*. See 307 Kan. at 317. Rather, J.C. cites various points of law about a legal duty, contract interpretation, leasing agreements, and whether someone is an independent contractor in his brief, but the arguments are not tied to any rulings made by the district court regarding those topics.

J.C.'s initial explanation is based on Judge Pierce's summary judgment ruling. In that motion, the YMCA sought to be absolved of liability, contending that Whittington

was solely responsible for J.C.'s injuries. The motion asserted: (1) Whittington owned Skywalker Gymnastics and had rented the bouncy houses for the event and was contractually responsible for it; and (2) Whittington could have had the YMCA provide supervision of the bouncy houses but declined to do so.

J.C. responded, pointing to evidence undercutting the YMCA's claim. For example, there was no document produced that had Whittington's signature, and no document establishing a relationship between Whittington and Skywalker Gymnastics. There was a licensing agreement between "YMCA Skywalker Gymnastics" and Finney County Fairgrounds governing the use of the West Pavilion, and a YMCA employee signed on behalf of YMCA Skywalker Gymnastics. And the district court was critical of an affidavit from Chad Knight, CEO of the YMCA, for being misleading or deceptive about the licensing agreement.

As we understand J.C.'s argument, it is that Judge Pierce made factual and legal findings cementing the relationship between the YMCA and Whittington and precluding Whittington and Skywalker Gymnastics from any assessment of fault. As J.C. puts it, "the court . . . settl[ed] the issue that no evidence existed that a Lee Whittington had any role in this case. The law of the case doctrine prevents re-litigation of the same issues within successive stages of the same suit." Thus, he asserts it was error for the second trial judge—Judge Ward—to allow the YMCA to place Whittington on the verdict form as a potentially negligent actor in contravention of Judge Pierce's earlier findings. He argues at trial the YMCA was permitted to ignore the summary judgment findings and "allowed to use the Skywalker/Lee Whittington defense."

But J.C. misrepresents the district court's summary judgment ruling. Although the court was critical of several aspects of the YMCA's motion, it did not decide the relationship between the YMCA and Whittington as a factual or legal matter. Regarding the licensing agreement, the court stated that "the issues of (1) what was Skywalker

7

Gymnastics on the date of the Incident and (2) who was the owner of same on said date, are still in dispute." Thus, as the YMCA asserts, the summary judgment motion was denied because of disputed facts about the relationship between Whittington and the YMCA. Furthermore, J.C. does not identify any specific finding by the judge prohibiting the apportionment of fault to Whittington, and we find no such ruling in the record. The balance of J.C.'s argument is commentary on the weakness and improbability of the YMCA's evidence at trial: evidence and argument that mirrors J.C.'s response to the summary judgment motion.

Considering the totality of the evidence, it was both factually and legally appropriate for the district court to allow the jury to assess Whittington d/b/a Skywalker Gymnastics' comparative fault.

First, the verdict form was legally appropriate. Under K.S.A. 60-258a—the Kansas comparative fault statute—"all types of fault, regardless of degree, are to be compared in order to apportion the causal responsibility for the accident. This is true whether the party at fault is the plaintiff, the defendant, or a *nonparty*." (Emphasis added.) *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 454-55 (10th Cir. 1982) (citing *Kennedy v. City of Sawyer*, 228 Kan. 439, 450, 460, 618 P.2d 788 [1980]).

As a panel of this court has explained, the comments in PIK Civ. 4th 105.04—offered by the YMCA in its proposed jury instructions—"clearly note[s] that [a comparative fault instruction] should be given *whenever* there is evidence of fault of a nonparty: 'Where the evidence warrants it, the court *must* add that person . . . solely for the purpose of determining and allocating fault upon a one hundred percent basis [by] including [that] person[ ] in the special verdict form.' . . . PIK Civ. 4th 105.04, Comment." *Dickerson v. Saint Luke's South Hospital, Inc.*, 51 Kan. App. 2d 337, 351, 346 P.3d 1100 (2015).

Second, the verdict form was also factually appropriate because evidence was presented at trial from which the jury could find Whittington at fault. As the YMCA points out, however, five YMCA employees testified at trial about Whittington's relationship with the YMCA and the factual basis supporting that Whittington shared responsibility for J.C.'s injuries.

Knight testified that the contract for occupying the West Pavilion at the Finney County Fairgrounds was a "dual independent contract" with Skywalker Gymnastics and that Skywalker Gymnastics was an independent contractor. Knight also stated that nobody from the YMCA was present at the West Pavilion that day—only Skywalker Gymnastics was. And while Knight acknowledged that the YMCA owned the bouncy house, he stated that Skywalker Gymnastics rented it and opted to have its own staff—rather than YMCA staff—supervise it on the day of the accident. He also testified several times that Whittington was Skywalker Gymnastics.

As the YMCA's Chief Administrator and coordinator of bouncy house rentals, Krystal Richardson testified that Skywalker Gymnastics was given a copy of the "Games to Go!" policies and rules for renting a bouncy house. And she confirmed that Skywalker Gymnastics chose to provide its own staff to supervise the bouncy house on the day of the accident rather than pay an extra fee to have the YMCA provide support staff.

Similarly, Steven Lynch, the direct contact between the YMCA and Skywalker Gymnastics, testified that Skywalker Gymnastics operated a gymnastics program on certain days of the week at the West Pavilion and that the YMCA never had employees teach or control the program. Lynch stated that as part of his employment at the YMCA, he would help register people for the gymnastics class and keep track of the income generated by Skywalker Gymnastics. Skywalker Gymnastics had an agreement to split funds generated from its regular program, but none of the money Skywalker Gymnastics earned at the family fun event was shared with the YMCA. Lynch also stated that while

9

the flyer for the family fun event included both the YMCA's logo and Skywalker Gymnastics logo, he never authorized the YMCA's logo to be printed on the advertisement.

Finally, Jackie Regan-Gaucin, a former employee and current CEO of the Dodge City YMCA, testified that Skywalker Gymnastics was an authorized provider of the YMCA, meaning it was a separate business providing services that the YMCA does not offer. She confirmed that Skywalker Gymnastics was an independent contractor and "their own entity" and that the YMCA did not staff, run, or control Skywalker Gymnastics' programs. Regan-Gaucin also stated that the licensing agreement for use of the West Pavilion allowed Skywalker Gymnastics—not the YMCA—to use the area to hold gymnastics programs on certain dates and times not including Saturday. Because the family fun day occurred on a Saturday, Regan-Gaucin testified that use of that area would need to be arranged directly with Finney County Fairgrounds, which she nor anyone with the YMCA did.

J.C. challenges this evidence, claiming that the "YMCA could not even show that Lee Whittington was a real person, or that Skywalker Gymnastics was a real legal entity." He argues that the YMCA exclusively held the leasing agreement for the land where the injury occurred, that Skywalker Gymnastics did not sign the leasing agreement, that the receipt for the bouncy house rental is not evidence that Lee Whittington exists because he did not sign it, and that the YMCA did not introduce an authorized provider contract with Whittington. J.C. concludes that "[n]o evidence of a Lee Whittington, and no evidence of a contract with a Lee Whittington, did not entitle the YMCA to place [him] on the verdict form."

But J.C.'s attempt to relitigate the evidence on appeal is misplaced as "an appellate court does not reweigh the evidence or pass on the credibility of the witnesses." *Unruh*, 289 Kan. at 1195. The bottom line is that this testimony of the YMCA witnesses

provided evidence from which the jury could find that Whittington existed, he did business as Skywalker Gymnastics, and he was at fault for failing to supervise the bouncy house and those using it at the time of J.C.'s injury.

As a final note, J.C. claims—without citing to the record—that the second trial judge erroneously allowed the YMCA to put Whittington on the verdict form under the "phantom motorist concept," which he asserts deals with insurance claims in single car accidents. *Cannon v. Farmers Ins. Co.*, 274 Kan. 166, 170, 50 P.3d 48 (2002) ("phantom vehicle" provision, 1981 amendment to K.S.A. 40-284[e][3], "designed to protect against fraudulent claims in one-car accidents when there is no independent proof of the existence of the phantom driver"). The YMCA does not respond to this argument.

It is true that during the instruction conference, the trial judge mentioned the phantom vehicle concept. But we see nothing indicating that the district court actually applied the phantom motorist concept to allow Whittington to be on the verdict form. Rather, the court simply commented about it when responding to counsel's statement that you cannot blame an "imaginary person or . . . corporation."

We find no error by the district court by including Whittington on the verdict form.

*The district court erred by allowing the jury to assess Mother's fault.*

Based on our review of the entire record, there is insufficient evidence in the record to support the inclusion of Mother on the verdict form. Including Mother on the verdict form was not legally or factually appropriate. As discussed above, a person must be added to the verdict form for purposes of assigning fault *where the evidence warrants it*. *Dickerson*, 51 Kan. App. 2d at 351. Here, the evidence does not warrant assigning fault to Mother.

11

The YMCA argues that "mother's own testimony provided sufficient evidence of her own fault." It notes that mother testified "several times that she did not witness her son's accident as she was not watching him on the bounce house when his accident occurred." Instead, "she had walked away to the concession stand and was waiting in line for some snacks while her son was playing on the bounce house."

But fault requires negligence *and* causation. *Zak v. Riffel*, 34 Kan. App. 2d 93, 101, 115 P.3d 165 (2005). Negligence is a departure from ordinary care, meaning a person is negligent when they fail to do something that an ordinary person would do (or not do) under the circumstances. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 33, 735 P.2d 222 (1987). And a person is at fault when he or she is (1) negligent and (2) that negligence "caused or contributed to the event which brought about the injury or damages for which a claim is made." *Zak*, 34 Kan. App. 2d at 101 (citing *Sharples v. Roberts*, 249 Kan. 286, 295, 816 P.2d 390 [1991]; PIK Civ. 3d 105.01). Proximate cause is a cause that "'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.'" *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010). Relevant here, to prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. 290 Kan. at 420.

As the jury instructions noted, the YMCA had to present evidence that Mother was negligent and that her negligence caused or contributed to her son's injuries. At trial, the only witness to describe the Mother's actions was Mother herself. At no point in the trial did the YMCA present evidence of any causal connection between Mother's conduct and her son's injuries.

12

Knight's testimony confirmed the owner's manual provides that it is the *operator's* responsibility to supervise children's behavior as well as to ensure compliance with all safety rules. It is the operator who is to "actively" monitor people playing in the bouncy house, enforce rules, and remove those not following the safety rules. Safety is the responsibility of the *operator* of the bouncy house, not the parent who permits a child to play in it. When asked if the owner's manual says "it's the parents' responsibility to make sure [the bouncy houses] are safe," Knight said, "No. Can't leave it on the parents." Consistent with Knight's testimony, in closing argument, counsel for the YMCA argued, "I'm not going to stand here and tell you [Mother] was at fault. This was an accident. There is nobody at fault." We thus find there was simply no evidence that Mother had a duty to personally supervise J.C. and ensure his safety once he was within the bouncy house.

The jury was instructed, without objection, "[p]arents have a duty to exercise management and control over their children and to exercise reasonable care for their child's safety. Failure to fulfill this duty constitutes negligence." It was also instructed, "[a] party is at fault when the person or corporation is negligent, and that negligence caused or contributed to the event which brought about the claim for damages."

Even if the jury believed Mother was *negligent* for walking away from her son to the concession stand 20 feet away, there is no evidence in the record, and no argument articulated by the YMCA, that there was a causal relationship between her negligence and the child's injuries, thus no *fault*. Nothing in the record supports a conclusion that, had mother been 20 feet closer or continuously watching her son, he would not have been injured. In other words, there is no evidence and no suggestion of what, why, or how mother's absence *caused* J.C.'s injuries. No evidence suggests that Mother's "walking away" was the proximate cause of his injury.

13

Since no one contemporaneously witnessed the incident, and there was no evidence concerning what J.C. was doing at the time he was injured, there is likewise no evidence from which the jury could find Mother could have managed or controlled her son's actions to prevent his injury. Simply put, the evidence did not establish that Mother's direct presence or absence had any impact on J.C.'s bouncy house injuries.

For these reasons, we find the district court erred by allowing the jury to assess Mother's fault alongside that of the YMCA and Whittington.

*Mother's inclusion on the verdict form was not harmless.*

Because Mother objected to her inclusion on the verdict form, we review the district court's error for harmlessness. If a party makes an appropriate and timely objection to the instructional issue, we review the error for harmlessness under the test in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). *Biglow v. Eidenberg*, 308 Kan. 873, 880-81, 424 P.3d 515 (2018) (same standard is used in civil cases). The test is whether the error affected substantial rights, meaning whether the error affected the outcome of the trial. *State v. Tully*, 293 Kan. 176, 193, 262 P.3d 314 (2011) (criminal); *Foster v. Klaumann*, 296 Kan. 295, 305, 294 P.3d 223 (2013) (civil).

Here, the inclusion of Mother on the verdict form necessarily affected the outcome of the trial. The jury was instructed that if it assigned fault to any party, "the total of all fault that you assign must be 100%." Because of the error, the verdict lacks the required assignment of 100% of the fault, resulting in the inability of J.C. to recover his full damage award. Consequently, we must reverse the jury verdict on the apportionment of fault and remand for a new trial on that issue.

14

*The district court did not err by excluding the owner's manual from evidence.*

"The admission of evidence lies within the sound discretion of the trial court." *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002). Thus, this court reviews a district court's decisions about the admission or exclusion of evidence for abuse of discretion. 272 Kan. at 1378. And a district court abuses its discretion when its actions are arbitrary, fanciful, or unreasonable. 272 Kan. at 1378. "If reasonable persons could differ as to the propriety of the action taken by the trial court, then . . . the trial court [did not] abuse[] its discretion." 272 Kan. at 1378. The party claiming that the court abused its discretion—here, J.C.—must prove such an abuse. 272 Kan. at 1378.

During his direct examination of Knight, J.C. moved to admit the owner's manual for the bouncy house—the very manual which the YMCA presented as "[t]he Owner's Manual for the bouncy house at issue" in its motion for summary judgment. Yet, the YMCA objected to the admission of the manual at trial based on inadequate foundation and hearsay. J.C. presented various arguments to answer the YMCA's objections, and he raises many of the same arguments on appeal, citing a number of hearsay exceptions and even the "law of the case" doctrine.

The court initially reserved its ruling on admission of the manual, but telling J.C. to "ask whatever questions you want of this witness about the manual." After taking some additional evidence, and questions by the district court outside the presence of the jury, the district court concluded it was unlikely to allow the manual to go to the jury, but it would permit J.C. to continue his examination of Knight about the manual.

Based on our review of the record, it appears the district court rejected the "foundation" objection, though it is not entirely clear, and it made no specific ruling or express finding on the hearsay objection. Nonetheless, it explained that the bouncy house is a commercial device requiring specialized knowledge to understand, and it did not

15

want to put the jury in a position where it was interpreting the manual and deciding whether the bouncy house was properly installed based on its reading of the manual.

The district court believed Knight had relevant specialized knowledge because of his experience handling the bouncy houses involved here, as well as others, so it allowed J.C. the *unrestricted* ability to refer to and ask questions of Knight about the content of the manual. J.C. thereafter asked specific questions regarding the proper set-up, supervision of, and safe operation of the bouncy houses using the information in the owner's manual. In his brief, J.C. does not identify any evidence in the manual which he was unable to address and admit through his examination of Knight.

Although the physical manual was not ultimately admitted as an exhibit, the evidence contained in the manual was permitted to be introduced through Knight's testimony. We view the district court's ruling as simply controlling the manner of admission but not the substance of the evidence. See *State v. Warden*, 257 Kan. 94, 115, 891 P.2d 1074 (1995) ("The admission of evidence, and the manner in which it is received, lies within the sound discretion of the trial court."). As such, the court's ruling falls well within its broad discretion over the admission of evidence and is not arbitrary, fanciful, or unreasonable. We find J.C. fails to meet his burden to show the district court abused its discretion in declining to admit the manual.

*Mother's claim for emotional distress was not preserved for appeal.*

Before trial, the district court granted the YMCA's motion in limine to prohibit J.C. from presenting evidence on her claim for emotional distress. The court ruled that because Mother did not allege injuries resulting from observing her son's injury, she was not entitled to recover damages under Kansas common law. As a threshold matter, we determine that J.C. failed to preserve this issue for appeal.

"The order resulting from a motion in limine may prohibit reference during trial proceedings to material which is irrelevant or prejudicial to a fair trial. The order is a temporary protective order that is subject to change during the trial." *Brunett v. Albrecht*, 248 Kan. 634, Syl. ¶ 3, 810 P.2d 276 (1991). And when a motion in limine is granted, the party being limited—here, J.C.—must "proffer sufficient evidence to the trial court in order to preserve the issue for appeal." 248 Kan. 634, Syl. ¶ 4; see also *Biglow*, 308 Kan. 873, Syl. ¶ 5.

As the YMCA highlights, J.C. failed to offer evidence of Mother's claim for emotional distress damages during trial and did not present Mother's claim for emotional distress damages during the instructional conference. And in fact, during that conference, J.C. agreed that Mother would not seek emotional distress damages due to Judge Pierce's ruling on the motion in limine.

J.C. is correct that K.S.A. 60-2102(a)(4) allows this court to review rulings from the beginning of the proceedings after a final decision in the case. *Kaelter v. Sokol*, 301 Kan. 247, 249, 340 P.3d 1210 (2015) ("An appeal may be taken to the Court of Appeals as a matter of right from any 'final decision.' K.S.A. 2013 Supp. 60-2102[a][4]."). But that statute is about whether the court has jurisdiction over the issue, not whether the issue is preserved for appeal. See *In re H.D.W.*, No. 90,193, 2004 WL 292112, at *2 (Kan. App. 2004) (unpublished opinion) (explaining that an unpreserved issue is not reviewable despite that the court may have jurisdiction under K.S.A. 60-2102[a][4]). J.C. did not proffer any evidence on Mother's emotional distress claim to the trial court, and that issue was not preserved for appeal.

*Conclusion*

The jury's verdict apportioning fault is reversed and the case is remanded to the district court for a new trial on that issue—without Mother on the verdict form as a party

17

to whom fault may be assigned. See *Eckdall v. Negley*, 5 Kan. App. 2d 724, 728, 624 P.2d 473 (1981). Because J.C. made no allegation of error by the jury in calculating damages, that portion of the jury's verdict is affirmed. See *Lutz v. Peine*, 209 Kan. 559, 564, 498 P.2d 60 (1972); *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 531, 571 P.2d 48 (1977); *Johnson v. Meade*, 1 Kan. App. 2d 254, 261, 563 P.2d 522 (1977).

Affirmed in part, reversed in part, and remanded with directions.